O'CONNOR & ASSOCIATES, an Illinois Limited Partnership, individually and on behalf of all others similarly situated, Plaintiffs,

v.

DEAN WITTER REYNOLDS, INC., et al., Defendants.

No. 81 Civ. 1354 (MEL).

United States District Court, S.D. New York.

March 25, 1983.

Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for plaintiff O'Connor & Associates; Robin J. Omahana, Chicago, Ill., of counsel.

Jackson & Nash, New York City, for defendant DWRI Inc. and certain of its employees; Christopher S. Rooney, New York City, of counsel.

Shearman & Sterling, New York City, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants Thomas C. Reed and Quaker Hill Development Corp.; Robert F. Dobbin, Kathleen M. Comfrey, New York City, David M. Balabanian, Michael J. Plishner, Stephen B. Yoken, San Francisco, Cal., of counsel.

Lukens, St. Peter & Cooper, San Francisco, Cal., for defendant William W. Goldberg; William M. Lukens, Martha Rosenberg, San Francisco, Cal., of counsel.

Townsend & Arnason, New York City, for defendant Frank M. Woods; J. Kenneth Townsend, Jr., New York City, of counsel.

LASKER, District Judge.

On March 5, 1981 the board of directors of Amax, Inc. ("Amax") publicly announced that Amax had received a merger proposal from Standard Oil of California ("Socal"), and simultaneously announced that Amax had decided to reject the offer.[1] The announcement triggered a substantial rise both in the price of Amax stock and of various series of options on Amax stock.

---

1. The events leading up to this securities fraud litigation have been more fully set forth in an earlier opinion. *See* 529 F.Supp. 1179 (S.D.N.Y.1981).

O'Connor & Associates, Inc. ("O'Connor"), which trades stock and options for its own account, sold 576 Amax call options on Amax stock between February 23, 1981 and March 6, 1981. The complaint charges the defendants with violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j), Rule 10b–5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b–5), and the common law, in connection with the defendants' purchases of Amax call options prior to March 6th. The individual defendants and Quaker Hill Development Corporation ("Quaker Hill") are alleged to have purchased Amax options between February 27, 1981 and March 6, 1981 while in the possession of inside information concerning Socal's merger proposal, or to have tipped such information to purchasers of Amax options, or both; Dean Witter Reynolds, Inc. ("DWRI") and A.G. Becker, Inc. ("Becker") are alleged to have aided and abetted the purchases of their customers with knowledge that or in reckless disregard of whether the customers were trading on the basis of material, nonpublic information.

O'Connor now moves pursuant to Fed.R. Civ.Pr. 23 for certification of a class consisting of

> "all persons or organizations Plaintiff, who sold out-of-the-money call options with March and June expiration dates in the stock of Amax, Inc. on the American Stock Exchange between February 27, 1981 and March 5, 1981, inclusive"

(Amended Motion for Class Certification, ¶ 1). Defendants Ann Marie Bero, Frederick Collins, John Damson, John Hanson, and David Kubat (together, the "DWRI defendants") cross-move to dismiss pursuant to Fed.R.Civ.Pr. 12(b)(6) for failure to state a cause of action as to them.

The DWRI defendants' motion, as well as their opposition to O'Connor's class certification motion, is predicated upon a comparison of the dates of their purchases of Amax options with the dates of O'Connor's sales of Amax options of the same series. The DWRI defendants claim that all of their purchases of Amax call options, which involved only options of the March 50 series,[2] took place after O'Connor's last sale of Amax options of the same series (albeit only by a few hours).[3] Therefore, the DWRI defendants argue, the complaint fails to state a cause of action as to them, since their duty either to disclose or to abstain from trading arose only when they commenced trading and it follows that the defendants' trades could not have injured O'Connor. *See Elkind v. Liggett & Myers, Inc.,* 66 F.R.D. 36, 41–42 (S.D.N.Y.1975). If O'Connor is not entitled to recover from the DWRI defendants, it is argued, O'Connor cannot serve as the named representative of a class of plaintiffs seeking to recover from the DWRI defendants, since "a representative of a class must himself be a member of the class he seeks to represent." *Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 64 F.R.D. 432, 434 (S.D.N.Y.1974) (Pierce, J.).

O'Connor contends that the DWRI defendants' argument for dismissal of the action ignores the teaching of cases such as *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith,* 495 F.2d 228 (2d Cir.1974) and *Wil-*

---

**2.** An option "series" is identified by its exercise price and expiration date; thus, a March 50 call option refers to a call option to purchase 100 shares of a given stock at $50 per share, which expires in March.

**3.** The DWRI defendants have submitted an affidavit of counsel in order to establish the precise times at which the defendants commenced trading. O'Connor argues that materials outside the pleadings may not be considered on a motion to dismiss, but does not dispute that the DWRI defendants' version of the facts is correct. The DWRI defendants state that their motion alleges only that the complaint is defi-

cient in that it fails to allege facts showing that the defendants traded prior to O'Connor, an allegation which they argue is necessary in order for the complaint to state a cause of action against them. We agree with the defendants' position, and thus find it unnecessary to consider the affidavit of counsel in disposing of the motion. We note, however, that it is reasonable to assume that O'Connor would have disputed the defendants' contentions and/or moved to amend the complaint if in fact O'Connor had made any trades following those of the DWRI defendants.

*son v. Comtech Telecommunications Corp.,* 648 F.2d 88 (2d Cir.1981), which hold that the duty to "disclose or abstain" is owed not only to those who trade directly with the possessor of inside information, but in general to those who trade "during the same period" as, or "contemporaneously" with, the possessor of inside information. *Shapiro, supra,* 495 F.2d at 237 ("during the same period"); *Wilson, supra,* 648 F.2d at 94 ("contemporaneously"). O'Connor argues that the DWRI defendants' trades, occurring as they did within only a few hours of O'Connor's last trade, clearly fall within the period to which the duty to "disclose or abstain" applies. Therefore, according to O'Connor, the complaint states a valid cause of action against the DWRI defendants. With regard to the appropriateness of O'Connor's serving as representative of the proposed class, O'Connor argues that cases such as *State Teachers Retirement Board v. Fluor Corp.,* 73 F.R.D. 569 (S.D.N.Y.1976) establish that the named plaintiff in a securities fraud case may properly represent class members whose trades occurred subsequent to the named plaintiff's last trade. Class certification in this action is therefore appropriate, O'Connor contends, because other members of the proposed class sold Amax options subsequent to the defendants' trades, even if O'Connor itself did not.

\*     \*     \*

■ We address first the DWRI defendants' motion to dismiss the complaint. As the DWRI defendants point out, the duty of one who possesses material nonpublic information concerning a contemplated investment is either to disclose the information, or to abstain from trading and from recommending the investment to others. *Shapiro, supra,* 495 F.2d at 236–238. Until the defendant trades he has not violated his obligation either to disclose or to abstain from trading, because the obligation has

not yet come into existence. Therefore, a plaintiff whose trades were completed prior to those of the defendant can claim no injury from the defendant's nondisclosure, regardless of the defendant's later use of inside information in the course of his trading.[4] It follows that O'Connor is not entitled to recover from those defendants who traded after O'Connor completed its last trade.

■ O'Connor's reliance on the principle that the duty to "disclose or abstain" is not confined to those who traded directly with the defendant, but extends to all those who traded "during the same period" as or "contemporaneously" with the defendant, is misplaced. *Shapiro, supra,* 495 F.2d at 237; *Wilson, supra,* 648 F.2d at 94. The fact that strict privity between buyer and seller is not required in order to assert a cause of action under Section 10(b) and Rule 10(b)–5 does not mean that the element of causation may be dispensed with in such actions. Thus, although the liability of one who trades on inside information may extend to all those who trade between the date of the defendant's sales and the date of public disclosure of the inside information, *see Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* [1975–76 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95,377 at 98,878 (S.D.N.Y.1975); *cf. Wilson, supra,* at 94–95, liability does not extend to those who traded prior to the defendant's breach of his duty to "disclose or abstain"—that is, prior to the date of the defendant's trades.

■ O'Connor argues vigorously that, under the holdings of cases such as *State Teachers Retirement Board, supra,* 73 F.R.D. at 571, there exists no automatic impediment to a plaintiff's representing class members whose trades occurred after his. This principle, though accurately cited, does not settle the question presented here. Regardless of the relationship of O'Connor's

---

**4.** An individual who provides inside information to others, of course, may be liable to those whose trades occurred subsequent to those of the insider's "tippees." This liability does not depend upon whether the insider's own trades, if any, preceded those of the plaintiff, but instead upon whether the trades of the tippee preceded those of the plaintiff. However, the complaint contains no allegation that the moving defendants tipped information to others who traded prior to O'Connor's last trade, and the question of "tipper" liability is thus not at issue here.

trades to the trades of the other putative plaintiffs, O'Connor may not maintain this action, whether as a class representative or in his individual capacity, against defendants whose actions could not have resulted in legal harm to O'Connor. *See Denny v. Barber* [1978 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 96,438 at 93,582 (2d Cir.1978); *In re Investors Funding Securities Litigation* [1980 Transfer Binder] Fed.Sec.L.Rep. ¶ 97,717 at 98,762 (S.D.N.Y.1980); *Leonard, supra,* 432 F.Supp. at 434–35. In *State Teachers Retirement Board,* as in the other cases cited by O'Connor, the class representative's standing to prosecute the action against each of the defendants was not in dispute; the question, instead, was whether the named plaintiff could adequately represent members of the class who had traded after the named plaintiff's last sale. *See also, e.g., Elkind v. Liggett & Myers, Inc.,* 77 F.R.D. 708 (S.D.N.Y.1977).

The line-drawing necessitated by the standing requirement—*e.g.,* the necessity of excluding the DWRI defendants because they traded a few hours after O'Connor's last trade—may appear unrelated to any real danger that O'Connor would not fairly and adequately represent class members who do have standing against each of the defendants. Nonetheless, the standing requirement is basic, and we are unaware of any authority permitting its abrogation even where, as here, there is no reason to doubt the named plaintiff's willingness and ability adequately to represent the proposed class.

■ As to those defendants whom O'Connor does have standing to sue, we find that certification of the proposed class is appropriate. The record discloses that during the proposed class period 5347 options contracts were sold by class members. Although the exact number of plaintiffs which this number represents has not yet been fixed, O'Connor states, and the defendants do not dispute, that there are between 50 and 500 members in the proposed class, a number which even at its lower ranges makes joinder impracticable and warrants class treatment.

Defendant William Goldberg argues, however, that class certification is inappropriate because most of the class members did not trade directly with him and therefore are not entitled to recover from him their trading losses. Although it is undisputed that Goldberg's initial trades occurred on February 27, 1981, at the beginning of the class period, Goldberg claims that his liability does not extend to everyone in the proposed class who traded after that date, but is limited to those who traded directly with him or whose trades were influenced by market conditions attributable to Goldberg's trading activity. In effect, Goldberg's contention is that class treatment is inappropriate in this action because in order to establish liability each plaintiff must prove how the trading activity of each defendant influenced the plaintiff's trading decisions, proof which will necessarily vary from plaintiff to plaintiff.

In support of his position Goldberg cites *Fridrich v. Bradford,* 542 F.2d 307 (6th Cir. 1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 769 (1977). *Fridrich,* an insider trading case, held that plaintiffs who traded during the same period as the defendants, but who neither purchased stock directly from any of the defendants nor were influenced in their trading decisions by the defendants' trading activity, could not recover from the defendants. Although the *Fridrich* plaintiffs' trading decisions might well have been influenced had the defendants disclosed the inside information they possessed at the time of their trades, the Sixth Circuit held that this fact alone did not establish an adequate causative link between the defendants' trades and the plaintiffs' losses to support liability.

■ If Fridrich represented the law of this Circuit, Goldberg's argument would be well taken. This Circuit, however, has rejected the conclusion reached in *Fridrich. See Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra; Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156 (2d Cir.1980). In *Elkind* the Court of Appeals noted that

"We ruled in *Shapiro* that defendants selling on inside information would be liable to those who bought on the open market and sustained 'substantial losses' during the period of insider trading." *Id.* at 168. The *Elkind* Court footnoted this statement with a reference to *Fridrich,* stating "[t]he Sixth Circuit has since reached the opposite conclusion." *Id.* at 168 n. 23. Thus, in this Circuit the plaintiff in an insider trading case need not prove that he traded directly with the defendant or that the volume of the defendant's trading somehow induced the plaintiff to trade; rather, the plaintiff may recover on a showing that he traded "during a period of tippee trading." *Elkind, supra,* 635 F.2d at 165; *see also Wilson, supra,* 648 F.2d at 95.[5]

Goldberg argues further that the cases cited above dealt with stock rather than options trading, and that the nature of the options market warrants application of a strict privity standard in options cases. The primary difference Goldberg cites is that while it is often impossible to match buyers and sellers of stock, because of the impersonal nature of the stock market, buyers and sellers in the options market can be readily matched on the basis of trading records. This argument does not persuade us that a different principle of causation should be applied to options cases. Al-

though the Court of Appeals did note in *Shapiro* the practical difficulties of matching particular sales with particular purchases, the Court's decision was based primarily not on that rationale but rather on the conclusion that "it would make a mockery of the 'disclose or abstain' rule if we were to permit the fortuitous matching of buy and sell orders to determine whether a duty to disclose had been violated." *Shapiro, supra,* 495 F.2d at 236. The duty to 'disclose or abstain,' in other words, is a duty imposed "to insure the integrity and efficiency of the securities market," a purpose which in *Shapiro* was held to require that liability extend to all those who traded during the same period as the defendants and who would not have traded had they known of the inside information possessed by the defendants. *Id.* at 237, 239–40. This rationale for the contemporaneous trading standard applies equally to options cases, regardless whether particular sales can be matched with particular purchases. Furthermore, if damages are limited to disgorgement of the defendants' profits in the instant case, as is true of stock cases, Goldberg can claim no prejudice from certification of the proposed class, since his potential liability remains the same regardless of whether he is sued by all persons who traded contemporaneously with him or only by those who traded directly with him.[6] See

---

5. *Wilson, supra,* held that this "contemporaneous trading" standard does not extend so far as to permit liability for a plaintiff's trades which occurred one month after the defendants' trades. The defendants in the instant case (including Goldberg), however, all traded within the proposed class period, which encompasses only seven days (February 27, 1981 to March 5, 1981). Thus, their trades clearly were sufficiently contemporaneous with those of the class members to permit a finding of liability under *Wilson.*

6. We do not address the question of the appropriate measure of damages, since the parties have not indicated that it is a matter of contention.

Keith Garber & Co. ("Garber"), the plaintiff in a companion but separate action against some of the defendants named in the instant complaint, opposes class certification on the ground that because of the disgorgement meas-

ure of damages Garber will be prevented from obtaining complete recovery if the class is certified. Garber argues that it has identified the individual defendant (Thomas Reed) to whom it sold options, and that Garber should be entitled to recover its entire loss from Reed rather than simply the pro rata share it will recover if the class is certified and damages are limited to disgorgement. The answer to this objection is that the Court of Appeals in *Elkind* recognized the incompleteness of the disgorgement measure of damages, and nevertheless concluded that it "offers the most equitable resolution of the difficult problems created by conflicting interests" in securities cases. 635 F.2d at 173. If disgorgement is held to be the appropriate measure of damages in the instant case, the disadvantage suffered by Garber will be no greater than that suffered by similarly situated plaintiffs in stock cases or by other options sellers in this case.

*Elkind v. Liggett & Myers, supra,* 635 F.2d at 172–73.

As to the remaining prerequisites to certification of this action as a class action, the defendants' objections are either without merit,[7] or may more appropriately be addressed by the creation of subclasses, if necessary.[8]

For the foregoing reasons, the DWRI defendants' motion to dismiss will be granted unless within thirty days O'Connor chooses to propose a plaintiff who has standing to sue all defendants to serve as the class representative. Because it appears that defendant Frank Woods also began trading after O'Connor completed its trades, a motion to dismiss as to Woods will also be entertained if O'Connor chooses not to propose a substitute class representative. *See* Affidavit of J. Kenneth Townsend, ¶¶ 3–6. The motion for class certification as to the remaining defendants is granted.

It is so ordered.

---

7. The defendants argue that O'Connor is not an appropriate class representative because O'Connor, unlike other class members, is a sophisticated investor which is subject to the defense that it should have realized the defendants were trading on inside information because of the increased volume of trading in Amax options during the proposed class period. Even if this argument had possible merit, it is not one which is likely to "become ... the focus of the litigation and upon a trial, divert attention from the substance of the basic claim." *Kline v. Wolf,* 88 F.R.D. 696, 700 (S.D. N.Y.1981) (Weinfeld, J.). It is plain that the main issue in dispute in this case is whether the defendants traded on inside information, not whether investors would have proceeded to sell options at the same price if the defendants had

disclosed that a merger offer was about to be announced.

8. Defendants Thomas Reed and Quaker Hill have argued that they are liable, if at all, only to those members of the proposed class who traded after they did and who purchased options of the same series, and that class certification is also inappropriate as to them. They have not argued, however, that all of Reed's purchases or those of his alleged tippees occurred following O'Connor's last trade. Thus, since O'Connor's standing as to Reed and Quaker Hill does not appear to be in issue, Reed's and Quaker Hill's argument is relevant, if at all, to the issue of whether subclasses would be appropriate, rather than to whether class certification is appropriate.