In re AST RESEARCH SECURITIES
LITIGATION.

This Document Relates to CV–94–1370 SVW (SHx), CV–94–1853 SVW (SHx) and CV–94–6718 SVW (SHx) only.

Master File No. CV 94–1370–SVW (SHx).

United States District Court,
C.D. California.

April 10, 1995.

Kevin M. Prongay, Eugene Mikolajczyk, Jon W. Borderud, Prongay & Mikolajczyk, Pacific Palisades, CA, and Mark C. Rifkin, John N. Zarian, and Adam D. Ducan, Jr., Greenfield & Rifkin, Haverford, PA, for plaintiffs.

Robert C. Vanderet, Seth Aronson, Brett J. Williamson, and Marc F. Feinstein, O'Melveny & Myers, Los Angeles, CA, for defendants.

**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION TO DISMISS AND TO STRIKE**

WILSON, District Judge.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

On December 21, 1994, the Court directed plaintiffs to file an amended complaint combining the remaining Brenner claims with the related *Marschall/Jones* Complaint into a single consolidated action. Defendants' present motion concerns new insider trading claims and other new issues raised in the Second Amended Complaint filed by plaintiffs on January 6, 1995. For the reasons stated herein, the Court hereby GRANTS defendants' Motion to Dismiss and Strike in part and DENIES the Motion in part.

*Analysis.*

*Insider Trading Claims.*

■ To maintain a private cause of action for insider trading against defendants, plaintiffs must establish that "contemporaneous" trades took place with defendants. Securities Exchange Act of 1934 § 20A(a), 15 U.S.C. § 78t–1(a) (1991). The Court previously ruled that plaintiff Brenner's purchase of January 25, 1994 was "contemporaneous" only with the sale the same day by defendant Ottaviano, and the sale one day prior by defendant Szeto. In paragraph 166 of the new Second Amended Complaint, plaintiffs allege sales on inside information by certain named defendants over a seven-day period "between January 24, 1994 and January 31, 1994," and allege that plaintiff Marschall, who bought his AST shares on February 2, 1994, "purchased AST common stock contemporaneously with said defendants' sales."

The Court must address a subject that was partially discussed in the Order issued on defendants' Motion to Dismiss filed in the *Brenner* action: how to define "contemporaneous." Plaintiffs argue that the Court definitively decided this issue in its prior Order. The Court disagrees. All of the claims dismissed in the *Brenner* action were premised on sales of AST stock by defendants that occurred either after or more than one

month before plaintiff's purchase. The Court held that those trades could not be contemporaneous, finding that Congress clearly intended "that trades must fall somewhere in-between a one month window from the time an insider trades for there to be a valid cause of action under Section 20A."[1] *See* December 6, 1994 Order. Thus, the Court merely held in its *Brenner* ruling that trades more than one month away were not contemporaneous. There was no need for the Court to draw the line any finer, and it did not choose to do so.

However, the new insider claims now require the Court to make those delicate distinctions. The Ninth Circuit has not squarely addressed this issue. Yet, the growing trend among district courts in a number of circuits, including the Ninth Circuit, is to adopt a restrictive reading of the term "contemporaneous" at least with respect to shares heavily traded on a national exchange. For example, in *In re Aldus Sec. Litigation,* Fed.Sec.L.Rep. (CCH) ¶ 97,376, 1993 WL 121478 (W.D.Wash.1993), approvingly cited to by this Court in its December 6 Order, the court held that only purchases and sales on the same day are "contemporaneous" for purposes of federal insider trading claims. The *Aldus* court reasoned:

> [B]ecause the contemporaneous trade requirement functions as a substitute for privity, plaintiffs' insider trading claims against all defendants other than Mr. McAleer must be dismissed. More specifically, given the unquestionably high volume of Aldus stock traded during the period in question, it is clear that plaintiffs did not trade with defendants other than possibly Mr. McAleer, as no plaintiffs traded on the days of the allegedly wrongful trades. Plaintiffs thus lack standing to assert insider trading claims against defendants other than Mr. McAleer, and for this reason, these claims are dismissed.

1. The Court held so because Congress in adopting 20A cited with approval three cases which discussed the "contemporaneous trading" requirement. H.R.Rep. No. 910, 100th Cong., 2d Sess. 27 (1988). Two of those cases, *O'Connor & Assoc. v. Dean Witter Reynolds, Inc.,* 559 F.Supp. 800 (S.D.N.Y.1983) and *Shapiro v. Merrill Lynch*

*Id.* at 95,987. *See also In re Stratus Computer Litig.,* 1992 WL 73555 (D.Mass.1992) (only same day trades contemporaneous); *Backman v. Polaroid Corp.,* 540 F.Supp. 667, 671 (D.Mass.1982) (trades two and seven days apart not contemporaneous).

The most recent and cogent exposition of the basis for the growing consensus on this limited delineation of "contemporaneous" is found in *Buban v. O'Brien,* 1994 WL 324093, 1994 U.S.Dist. Lexis 8643 (N.D.Cal. June 16, 1994). In *Buban,* the court dismissed an insider trading claim asserted by a plaintiff who purchased more than three days after an alleged insider sale. In determining whether these trades were contemporaneous, the *Buban* court examined the underlying goals of the contemporaneous requirement, first developed by the courts, and later codified in Section 20A:

> The purpose of the "disclose or abstain" rule is to protect only those who might actually have traded with insiders. *Wilson,* 648 F.2d at 95.... The requirement of contemporaneousness developed as a proxy for the traditional requirement of contractual privity between plaintiffs and defendants. Since identifying the party in actual privity with the insider is virtually impossible in transactions occurring on an anonymous public market, the contemporaneous standard was developed to give plaintiffs a more feasible avenue by which to sue insiders. [citation omitted]. The requirement was intended to preserve the notion that only plaintiffs who were harmed by the insider could bring suit, while nonetheless making it possible for such persons to bring suit. While an actual trade between plaintiff and defendant need not be expressly shown, harm to the plaintiff is a necessary factor. Such harm may be found where it appears that plaintiff might, in fact, have traded with defendant.

*Pierce Fenner & Smith, Inc.,* 495 F.2d 228 (2d Cir.1981), determined that trades within seven and four days, respectively, were contemporaneous. The third case determined that trades one month distant from the insiders' trades were not contemporaneous. *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88 (2d Cir.1981).

*Id.* at *2–*3, 1994 U.S.Dist. Lexis 8643 at *6–*7. The plaintiff in *Buban* had bought the subject shares three business days after defendant's sale. Since the stock had been heavily traded in those three intervening days, the court determined that plaintiff could not have traded at an informational disadvantage with defendant "because the market had already absorbed defendant's sales prior to plaintiff's purchase" of the subject stock. *Id.* at *4, 1994 U.S.Dist. Lexis 8643 at *11.

Plaintiffs make a weak attempt to distinguish *Buban*. For example, plaintiffs assert that "the court in *Buban* relies in great part upon Massachusetts law for its holding...." In fact, there is not a single reference to Massachusetts law anywhere in the court's opinion. The opinion is based entirely on federal law; there is no connection with Massachusetts law. Plaintiffs also claim that *Buban* fails to mention the standards set forth in the three cases that Congress cited with approval in connection with its imposition of a "contemporaneous" requirement. *See* Footnote 1. However, the *Buban* opinion makes it clear that the court did review the legislative history of Section 20A to discern Congress' intent, specifically noting that "a 1988 House Report indicates that Congress specifically contemplated a case-by-case approach to defining "contemporaneousness. H.R.Rep. No. 910, 100th Cong., 2d Sess. 27 (1988)." *Buban*, 1994 WL 324093, at *4, 1994 U.S.Dist. Lexis at *5, n. 3. Thus, the Court does not believe that it is necessarily restrained by the cases initially cited to by Congress.

The Court finds the reasoning of *Buban* and *Aldus* persuasive. Since the "contemporaneous" concept acts as a proxy for common law privity, there must be some logical limit on those plaintiffs that can bring insider trading claims. The Court concludes that a same-day definition of "contemporaneous" is proper—i.e., the sale by an insider and subsequent purchase by an aggrieved party must occur on the same day. The same day standard is the only reasonable standard given the way the stock market functions.

AST stock is traded through the NASDAQ index. Stock trading on NASDAQ occurs auction style; stock is sold to the highest bidder and purchased from the lowest offeror in every transaction. Thus, supply and demand determine whether stock transactions occur. Here, the fact that defendants "sold" shares over a seven-day period between January 24, 1994 and January 31, 1994, necessarily means that there were purchasers for the shares sold on each of these days. If there were no takers on these days, no stock transactions would have taken place.

Plaintiff Marschall's purchase of AST stock was not made on any of the days the named defendants sold shares. This necessarily means that Marschall could not have purchased any of the shares sold by the defendants, since the market had already absorbed these shares. Thus, all of the new insider claims alleged by plaintiff Marschall in the amended complaint fail and are dismissed. As noted, the Court had previously ruled that plaintiff Brenner's purchase of January 25, 1994 was contemporaneous with the sale one day prior by defendant Szeto. In light of the Court's refined definition of "contemporaneous," the Court also dismisses Brenner's insider claim premised on Szeto's sale.

*Tipper Liability Under Section 20A(c).*

In its Order of December 6, 1994, the Court rejected plaintiff Brenner's argument that she could still maintain a cause of action against those defendants with whom she has no contemporaneous trades by virtue of the provisions of Section 20A(c), 15 U.S.C. § 78T–1(c). Section 20A(c) makes 'tippers'—i.e., those who 'communicat[e] material, non-public information' to others—jointly liable with their 'tippees' who used the inside information to trade in violation of the statute. 15 U.S.C. § 78T–1(c). This was not the basis of plaintiff Brenner's claims against the non-contemporaneous traders, and therefore the Court held it was not a proper basis for liability. Plaintiffs have attempted to resurrect this theory in its Second Amended Complaint by conclusorily alleging that:

> defendants also communicated [unspecified] material adverse non-public information about the company to each other, and to other individuals during the class period ... which individuals utilized said material

adverse non-public information when they sold [on unspecified occasions] AST common stock.

Second Amended Complaint, ¶ 165.

■ An insider risks becoming an illegal tipper only when he violates his fiduciary duties to the corporation by communicating inside information for non-corporate purposes outside the company, and even then, only when done for a personal benefit. *See Dirks v. SEC,* 463 U.S. 646, 662–63, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983). Plaintiffs' allegations are nonsensical because all nine of the individuals identified in plaintiffs' Second Amended Complaint as having engaged in insider trading are AST employees. Thus, plaintiffs attempt to state a claim under Section 20A(c) based on officers of AST communicating unspecified internal corporate information *within the company* to other AST personnel. The communication of corporate information within a corporation does not constitute the illegal disclosure of "material non-public information" under Section 20A(a). If it did, companies could not function since no corporate employees could discuss internal, non-public information without risking a violation of Section 20A.

Furthermore, the Ninth Circuit has recently held that in a claim under Section 20A, "contemporaneous trading must be pleaded with particularity under Rule 9(b)." *Neubronner v. Milken,* 6 F.3d 666, 670 (9th Cir. 1993). The complaint "must specify the times, dates, places ... and other details of the alleged fraudulent activity." *Id.* at 672. Amorphous allegations that individuals sold stock on unspecified inside information, and on unspecified dates, which may or may not have been contemporaneous with plaintiffs' trades, do not state a claim under Section 20A. *Alfus,* 745 F.Supp. at 1523; *In re Genentech, Inc. Sec. Litigation,* Fed.Sec. L.Rep. (CCH) ¶ 94,960, 1989 WL 201577 (N.D.Cal.1989). Plaintiffs have not specified in the complaint what material non-public inside information defendants supposedly communicated to the listed individuals, or anyone else, nor is there any allegation of when any of these supposed "tippees" traded on such information. In fact, the allegations are bereft of any details whatsoever. Therefore, the Court dismisses these claims once again.[2]

### Addition of New Defendant/Issues.

■ Defendants also complain that plaintiffs are attempting to add a new defendant—Mark de Raad, AST's controller—and new allegations in their Second Amended Complaint. Fed.R.Civ.P. 15 provides that after the filing of responsive pleadings, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." In the Court's Order of December 21, 1994, the parties were allowed "to amend the *Marschall/Jones* [complaint] to add the *Brenner* allegations." Defendants argue that plaintiffs have gone far beyond the Court's directive with the new allegations in the amended complaint filed. These new factual allegations primarily concern AST's alleged failure to disclose the need for massive inventory writedowns regarding the technological equipment obtained in AST's acquisition of Tandy Corporation, and the defendants' alleged efforts to hide these write-downs by use of improper accounting techniques.

Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(b) permits free amendment up to the time of trial, or even later, in order to conform the pleadings with the evidence, provided that the objecting party fails to demonstrate undue prejudice. *See Howey v. United States,* 481 F.2d 1187, 1190–91 (9th Cir.1973) (absent "undue prejudice," amendment during trial to be allowed); *State Federal Savings and Loan Ass'n v. Campbell,* 848 F.2d 1186 (11th Cir.1988) (amendment three days before trial); *Genentech, Inc. v. Abbott Laboratories,* 127 F.R.D.

**2.** Plaintiffs appear to acknowledge the questionable nature of these claims in their Opposition, but argue that "they do not seek to reargue their position regarding the tipper/tippee claim already ruled upon by the Court.... Plaintiffs have re-alleged [the tipper-tippee claims] solely to preserve the claim in the event that they elect to appeal the dismissal of the tipper/tippee claim...." The Court notes that its dismissal of these claims will not in any way prevent plaintiffs from preserving the issue on appeal.

529, 530 (N.D.Cal.1989) (amendment permitted unless bad faith, unexcused delay, prejudice, or futility; delay alone is inadequate basis for denial of right to amend).

Defendants argue that plaintiffs have had most of the key financial documents on which they base their new claims concerning the Tandy acquisition in their possession for months. Plaintiffs counter that it was not pleaded earlier because recent discovery has more fully uncovered the concealment problems related to the inventory acquired by AST. According to plaintiffs, depositions taken in late October and November 1994 further revealed the significance and extent of the alleged concealment. Plaintiffs also argue that there is no undue prejudice here because the amendments do not provide new claims or surprising information—they are merely seeking to conform the pleadings to the recently developed evidence. Plaintiffs assert that they have already raised the issue of accounting improprieties in numerous past hearings and status conferences before the Court. Plaintiffs also allegedly inquired about this issue for many hours in various depositions. Therefore, plaintiffs argue that defendants cannot credibly claim that they were surprised at the new factual details in the amended complaint.

The Court will allow the amendments to the complaint as they relate to the "new" allegations. While the Court believes that these amendments go beyond what was instructed in its December 21 Order, there has not been a sufficient showing of undue prejudice to justify prohibiting plaintiffs from amending their complaint to, as they put it, "conform the pleadings to the evidence." The Court agrees with plaintiffs' assertion that impropriety related to the Tandy acquisition has been a recurring issue in this action. In the Court's estimation, plaintiffs' Second Amended Complaint merely places the proverbial "meat on the bone." Thus, defendants' motion to dismiss these allegations is denied.

■ As for the issue of adding Mr. de Raad as a defendant, in light of the great emphasis plaintiffs have placed on various memoranda authored by Mr. de Raad in opposing defendants' Motion for Summary Judgment, the Court finds that plaintiffs cannot reasonably maintain that they only became aware of Mr. de Raad's "intimate" involvement in this case until late December 1994. Furthermore, the Court believes that adding Mr. de Raad as a defendant at this late stage in the case would also be unduly prejudicial. Accordingly, the Court will not allow Mr. de Raad to be added as a defendant.

*Conclusion.*

For the foregoing reasons, the Court hereby GRANTS defendants' Motion to Dismiss and Strike in part and DENIES the Motion in part.

IT IS SO ORDERED.