Donald **JOHNSON**, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

James D. **ALJIAN**, Kirk Kerkorian, and Tracinda Corporation, Defendants.

No. CV 03–5986 FMC (PJWx).

United States District Court, C.D. California.

Feb. 13, 2009.

Bryan King Sheldon, Christopher Kim, Lisa J. Yang, Lim Ruger And Kim LLP, Los Angeles, CA, Christopher L. Nelson, John J. Gross, Mark S. Danek, Jennifer L. Keeney, Benjamin J. Hinerfeld, Barroway Topaz Kessler Meltzer & Check, LLP, Marc A. Topaz, Richard A. Maniskas, Stuart L. Berman, Schiffrin Barroway Topaz And Kessler LLP, Radnor, PA, Douglas M. Leavitt, Danziger Shapiro & Leavitt, Philadelphia, PA, for Plaintiff.

Cary Donahue Sullivan, Eric N. Landau, Kristel Adriane Robinson, Shawn M. Harpen, Jones Day, Irvine, CA, Eric Peter Early, Kevin Samuel Sinclair, Lisa M. Zepeda, Timothy Yuchi Sung, Glaser Weil Fink Jacobs Howard & Shapiro LLP, Los Angeles, CA, James K. Goldfarb, Jones Day, New York, NY, for Defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

FLORENCE–MARIE COOPER, District Judge.

This matter is before the Court on Plaintiffs' Motion for Class Certification (docket no. 98), filed on July 17, 2008. The Court has considered the moving, opposition and reply documents submitted in connection with this Motion. The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78(b); Local Rule 7–15. The hearing set for February 23, 2009, is removed from the Court's calendar. For the reasons and in the manner set forth below, Plaintiffs' Motion for Class Certification is GRANTED.

## I. BACKGROUND

This is an a putative securities fraud class action brought on behalf of a Class consisting of persons who purchased the common stock of DaimlerChrysler AG ("DCX") on nine different dates between March 19, 1999 and June 11, 1999 (the "Purchase Dates"). With this suit, Plaintiffs originally asserted claims for alleged violations of the Securities Exchange Act of 1934 (the "1934 Act") against three Defendants: Tracinda Corporation ("Tracinda"), Kirk Kerkorian ("Kerkorian"), and James D. Aljian ("Aljian"). Tracinda is wholly owned by Kerkorian. Aljian, who was an officer of Tracinda and a member of the DaimlerChrysler Shareholder Committee, is now deceased.[1]

The factual and procedural history of this case is familiar to the parties and will be recited only as necessary to elucidate an issue relevant to the Court's ruling on the Motion presently before it.

This action was filed on August 21, 2003. On November 19, 2003, Glenn Rumsey was appointed Lead Plaintiff,[2] and, on January 23, 2004, the First Amended Complaint ("FAC") was filed.

On July 30, 2004, the Court dismissed with prejudice the first and second causes of action, but denied Defendants' motions to dismiss as to the third cause of action for alleged violations of Section 20A of the 1934 Act, 15 U.S.C. § 78t–1.[3] On October 19, 2004, the Court certified for interlocutory appeal to the Ninth Circuit Court of Appeals the issue of whether a time-barred claim, *e.g.*, claim 1 for violation of Section 10(b), could serve as the a predicate act to support otherwise timely Section 20A claims. On June 20, 2007, the Ninth Circuit affirmed this Court's judgment. Defendants' request for an en banc hearing was denied, as was their Petition for Writ of Certiorari to the United States Supreme Court.

On November 16, 2007, in compliance with the Court's October 27, 2004 Minute Order, Defendants filed their Answer to the FAC.

On July 17, 2008, Plaintiffs filed this Motion for Class Certification. Thereafter, on October 23, 2008, Plaintiffs filed separate motions requesting: (a) the withdrawal of Glenn Rumsey and appointment of Richard Pierce and John Colella as lead plaintiffs of the putative Class, and (b) the withdrawal of Fritz Spohrer and addition of Edith G. Combs as a proposed class representative. On November 14, 2008, the Court granted those motions.

On January 5, 2009, Defendants filed their Opposition to Plaintiffs' Motion for Class Certification; on February 6, 2009, Plaintiffs filed their Reply thereto.

## II. LEGAL STANDARD

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001) (citing *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir.1996)).

Pursuant to Federal Rule of Civil Procedure 23, one or more members of a class may sue as representative parties on behalf of the entire class only if all of the following four elements are met:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

---

1. For purposes of this Order, references to "Defendants" are to Tracinda and Kerkorian. collectively.

2. In the same November 19, 2003 Order, Schiffrin, Barroway, Topaz & Kessler, LLP ("Schiffrin") was approved as Class Counsel and Lim, Ruger & Kim, LLP ("Lim Ruger") was approved as Liaison Counsel.

3. "Any person who violates any provision of this chapter or the rules or regulations thereunder by … selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the … sale of securities that is the subject of such violation, has purchased … securities of the same class." 15 U.S.C. § 78t–1(a).

representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).[4]

In addition, the Court must find that one of the conditions of Rule 23(b) has been satisfied. Rule 23(b) provides that a class action may be maintained if: (1) the prosecution of separate actions would create a risk of (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b). In determining whether the last condition has been satisfied, courts consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) has been met. *Dukes v. Wal–Mart, Inc.,* 509 F.3d 1168, 1176 (9th Cir.2007).

## III.  DISCUSSION

With this Motion, Plaintiffs ask the Court to: (a) certify a proposed class consisting of all persons and entities who purchased or otherwise acquired DCX common stock contemporaneously with Tracinda's sales of DCX stock on March 18, 1999, March 22, 2999, April 6, 1999, April 8, 1999, June 3, 1999, June 4, 1999, June 8, 1999, and June 11, 1999, and who were damaged thereby;[5] (b) appoint plaintiffs Burt Fisher, Alan Percival, Edith G. Combs,[6] Leroy Unruh, Richard Pierce, John Colella, and Thomas Tarantino as Class Representatives; and (c) appoint Schiffrin as Class Counsel and Lim Ruger as Liaison Class counsel. Pls' Mot. for Class Cert. at 1–2.

### A.  Class Certification

Plaintiffs maintain that the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied here. Opposing Plaintiffs' Motion, Defendants do not directly challenge Plaintiffs' showing that Rule 23(a)'s numerosity, commonality, typicality, or adequacy prerequisites are satisfied or that Rule 23(b)(3)'s requirements (*i.e.,* the so-called "predominance" and "superiority" requirements) are met. Rather, Defendants challenge the class period as "improperly defined and overbroad," Defs' Opp'n at 4, and take the position that "[a]ccounting only for Tracinda's private sales and DCX's public disclosure of the alleged inside information no later than April 28, 1999, the court at most should certify a class of shareholders who traded contemporaneously with Tracinda's sale of DCX stock on April 6, 1999." *Id.* at 1. This notion flows from the premise that, "[i]n the absence of an overarching claim for damages under Section 10(b), to comport with Section 20A's standing requirements, plaintiffs' definition must be adjusted to provide for nine distinct classes to separately cover each of the days in question." Defs' Opp'n at 5. However, the Court is not persuaded that nine separate classes are required. First, although Plain-

---

**4.** The four prerequisites for class representatives are commonly referred to by the following shorthand labels, respectively: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.

**5.** Plaintiffs note that "[e]xcluded from the Class are: Tracinda, Kerkorian, Aljian, officers and directors of Tracinda, members of their immediate families, any entity in which any defendant

has or had a controlling interest, and the legal representatives, heirs, successors or assigns of any defendant." Pls' Mot. for Class Cert. at 2 n. 3.

**6.** Pursuant to the Court's November 14, 2008 Order, Edith G. Combs is added, and Fritz Spohrer withdrawn, as a Class Representative.

tiffs' separate Section 10(b) claim was dismissed as time-barred, it does not follow that Section 10(b) is "absent" from this case. *See Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir.2007) ("Claims under Section 20A are derivative and therefore require an independent violation of the Exchange Act."). Indeed, violation of Section 10(b) is the predicate violation in this case. Moreover, the cases cited by defendants for the proposition that "unlike Section 10(b), there is no continuous class period that runs up to the date of disclosure," Defs' Opp'n at 5 (citing *In re Wireless Facilities, Inc. Sec. Litig. II,* 253 F.R.D. 607, 609 (S.D.Cal. 2008), as compared to *In re MicroStrategy, Inc. Sec. Litig.,* 148 F.Supp.2d 654, 661 n. 12 (E.D.Va.2001)), fall far short of dictating such a conclusion, and their suggestion that nine separate classes are required is otherwise unsubstantiated. Without starting from Defendants' proposed premise, the Court proceeds to consider the merits of Defendants' arguments for narrowing the definition or scope of the proposed class.

Defendants maintain that "as part of the decision on certification, Section 20A will *require* three determinations: (1) the date of disclosure of DCX's decline in cash flows (the alleged inside information), which provides an outer boundary to all of plaintiffs' class claims; (2) the identification of Tracinda's market sales, as opposed to private trades; and (3) the 'contemporaneous' trading period." Defs' Opp'n at 5 (emphasis added).

■ Defendants' assumption that the Court must make the above determinations as part of the class certification process is apparently premised on their reading of the following footnote in *Dukes v. Wal–Mart:*

> Of course, we recognize that courts are not only "at liberty to" but *must* "consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying merits of the case."

*Dukes,* 509 F.3d at 1177 n. 2. Defendants interpret this observation to mean that "the Ninth Circuit directs the district courts to delve into the merits at this critical juncture[.]" Defs' Opp'n at 3–4. The Court is not persuaded that the referenced footnote is

reasonably read to mean anything other than that, in the course of conducting the required rigorous analysis to determine whether Plaintiffs have shown that the Rule 23's requirements are satisfied, courts must consider evidence relevant to that particular analysis. Additionally, the Court finds that the phrase "even if the evidence may also relate to the underlying merits of the case" does nothing more than further describe the type of evidence the Court must consider in conducting its analysis, clarifying that the evidence "may *also* relate to the underlying merits of the case." *Dukes,* 509 F.3d at 1177 n. 2 (emphasis added). Stated otherwise, this does not mean that this Court is under direction to "delve into the merits" in order to decide the Motion before it; it means only that, for purposes of ruling on a motion for class certification pursuant to Rule 23, the Court may not reject arguments or evidence "solely because they overlap[ ] with 'merits issues.'" *See id.; see also id.* at 1177 (agreeing with the district court's conclusion that the defendant's purported challenges to the plaintiffs' evidence of commonality "related *not* to the Rule 23(a) requirement of commonality but to the ultimate merits of the case and thus should be properly addressed by a jury considering the merits rather than a judge considering class certification" (internal quotations and citations omitted) (emphasis in original)).

Proceeding to an analysis of Defendants' arguments for narrowing the class definition, as an initial matter, the Court finds it is clear that Defendants have mounted no opposition to Plaintiffs' showing that Rule 23(a)'s numerosity prerequisite is met. Accordingly, having reviewed Plaintiffs' arguments and evidence on that issue, the Court determines that the numerosity prerequisite is met.

Although it is not immediately apparent which of the remaining Rule 23 standards Defendants intend to challenge here, the Court considers the three lines of argument advanced by Defendants to determine whether one or more of them precludes a determination that any one of the remaining elements of Rule 23(a) or the standards of Rule 23(b)(3) are satisfied. Based on the its review of Plaintiffs' argument and evidence in

connection with each of the remaining Rule 23 requirements, and the Court concludes that those requirements are also satisfied. Accordingly, to the extent that Defendants do not prevail on the basis of the arguments and evidence presented in their Opposition, the substance of Plaintiffs' showing regarding the remaining Rule 23 requirements is unchallenged.

### 1 Post–April 28, 1999 Claims

■ Defendants first argue that claims based on sales made by Defendants after April 28, 1999 may not be certified for class treatment because the fraud-on-the-market theory does not apply after public disclosure of the alleged inside information.[7]

The alleged inside information in this case is a DCX board report indicating a decline of approximately 2.520 billion in DCX's free cash flow in 1999, as compared to 1998. FAC ¶ 25. In the FAC, Plaintiffs allege that public disclosure of the inside information on which Defendants are alleged to have traded occurred with DCX's July 29, 1999 filing of a Form 6–K that disclosed a 2.1 billion drop in cash flows for the first half of 1999, as compared to the first half of 1998. *Id.* ¶ 33. Plaintiffs further allege that, as a result of this disclosure, DCX stock dropped 8.8% on July 29, 1999. *Id.* ¶ 34. Defendants counter that, in a Form 6–K filed on April 28, 1999, DCX publicly announced a 0.4 billion decrease ("compared with the first quarter of 1998") in "[c]ash flow provided by operating activities." Sullivan Decl., Ex. A at 26.[8]

In their Opposition, Defendants argue that, because the Court "must" consider facts bearing on the fraud-on-the-market theory in assessing a motion for class certification, Defs' Opp'n at 6, it follows that claims for trades made after the filing of the April 28,

1999 Form 6–K ("April 6–K") are not amenable to class treatment. The Court disagrees.

First, the facts presented here are distinguishable from those in the cases Defendants cite in support of this argument. For example, in *In re Securities Litigation,* 88 F.R.D. 134 (N.D.Tex.1980), the Northern District of Texas found that the class period was properly closed as of the date on which the company "announced its request to the SEC to suspend trading in the securities for 10 days with a press release specifically stating that adjustments to the inventory value of J & L Stell Inventories 'would have a materially adverse impact on the reported results of the operations of J & L Steel and of LTV.' " *Id.* at 147. The April 6–K's mention of a 0.4 billion decrease in cash flow in the first quarter is hardly comparable, particularly in light of the alleged insider information anticipating a decrease of approximately 2.520 billion for the year and the July disclosure of a drop approximating that anticipated amount. The "barrage" of substantial, detailed, negative information discussed in *Lerch v. Citizens First Bancorp, Inc.,* 144 F.R.D. 247 (D.N.J. 1992), is similarly distinguishable. *Id.* at 254–55 ("The undisputed facts support a finding that after August 31, 1990, when the barrage of information detailed above had been disclosed, the investing public was in a qualitatively different position with regard to reliance on allegedly fraudulent statements than potential investors prior to that time.").

Second, to the extent that some aspect of the merits of the purported class period is, necessarily, before the Court, the Court declines to close the class period as of April 28, 1999, because it finds a substantial question of fact exists regarding whether the April 6–K constituted a public disclosure that would cut off liability for trades made after that date and before July 29, 1999.[9] *Cf. In re*

---

7. "The fraud-on-the-market presumption is 'based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements ...' " *Binder v. Gillespie,* 184 F.3d 1059, 1064 (9th Cir.1999) (quoting *Basic Inc. v. Levinson,* 485 U.S. 224 241–42, 108 S.Ct. 978, 99 L.Ed.2d

194 (1988) (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3d Cir.1986))).

8. Defendants' Request for Judicial Notice ("RJN") of the April 1999 Form 6–K, a public document, is granted. Fed.R.Evid. 201.

9. The Court is not persuaded that the proffered testimony from two of the proposed class representatives that the disclosure in the earlier Form 6–K changed their minds regarding the date of

*Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572, 579 (D.Colo.2001) ("The majority of courts have coped with this dilemma [of needing 'to evaluate some aspects of the merits of plaintiffs' class period to determine the proposed class period'] by determining whether there is a substantial question of fact as to whether the release had cured the market or was itself misleading" (internal quotations and citations omitted)); *see also cf. Freeland v. Iridium World Communic'ns, Ltd.*, 233 F.R.D. 40, 47 (D.D.C.2006) (noting in the context considering proof required to satisfy "loss causation" element of a 10b–5 fraud claim agreement among several district courts that "reading *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)] to require proof of a complete, corrective disclosure would allow wrongdoers to immunize themselves with a protracted series of partial disclosures").

### 2. Private Trades on March 22, April 8, and June 8

■ Defendants also argue that Tracinda's March 22 sale to Bear Stearns & Co. ("Bear Stearns"), its June 8 sale to Credit Suisse First Boston ("Credit Suisse"), and the three (of its four total) April 8, 1999 sales of DCX stock to Bear Stearns must be excluded from class treatment because they are private sales. *See In re MDC Holdings Sec. Litig.*, 754 F.Supp. 785, 804 (S.D.Cal.1990) (noting "that the fraud on the market presumption of reliance is not available where the securities were offered in more or less private dealings"); *see also* Gross Decl. in Support of Pls' Reply, Ex. C (Discovery Responses Nos. 3 and 4, identifying Bear Stearns and Credit Suisse as Tracinda's broker and confirming sales to Bear Stearns and Credit Suisse First Boston as principal on the reference dates). Accordingly, Defendants maintain, class members whose purchases are contemporaneous to the dates of those sales lack standing.

The Court finds that Defendants' conclusion is not compelled by the authority on which they rely. Rather, the cases on which

the public disclosure of DCX's cash flow decline dictates a conclusion that the earlier 6–K pre-

Defendants rely stand for the proposition that the fraud-on-the-market presumption is not available to plaintiffs asserting Section 10(b) claims where the allegations in the complaint are not sufficient to invoke the benefit of the "presumption of reliance [that] applies where securities were traded on an open and developed market." *E.g., In re MDC Holdings Sec. Litig.*, 754 F.Supp. at 805 ("The court finds that the plaintiffs have not pleaded facts sufficient to invoke the *Basic* presumption of reliance.") In the complaint's four references to the market for the notes, there are no facts concerning the activity of the notes, the number of securities analysts reporting on the notes, or the number of market makers (contrasting allegations regarding the market for notes and that for the common stock which "is in a different position ... because it was traded on the New York Stock Exchange" and finding that "[g]iven the record on the notes ... this conclusory, generic reference to the market for 'MDC securities' is not sufficient to invoke the fraud on the market presumption of reliance as to the notes"). It does not necessarily follow that, for purposes of class certification on a fraud-on-the-market theory, Plaintiffs need to allege or show more than purchase(s) of a security that is actively traded in an efficient market made contemporaneous with a sale by an insider in possession of material, non-public information. Additionally, the Court finds persuasive Plaintiffs' argument that "if Defendants' argument were adopted as law, then all a person would need to do to avoid liability under § 20A would be to runnel sales of shares through a broker." Pls' Reply at 14. Accordingly, the Court finds that purchases contemporaneous with Tracinda's March 22, April 8, and June 8 sales need not be excluded from class treatment.

### 3. Trades Contemporaneous to April 6, June 10, and June 11

■ "There is no law binding on this Court as to what constitutes 'contemporaneous' trading." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1204

cludes any claims based on trades made after April 28, 1999.

(C.D.Cal.2008); *see also Neubronner v. Milken,* 6 F.3d 666, 670 (9th Cir.1993) (leaving "[t]he delineation of how far apart in time trades may be without being too far apart to satisfy the contemporaneous trading requirement [to be] worked out in cases much closer to a probable borderline than this one[,]" which alleged a three-year period of contemporaneous trading).

Defendants argue that recent case law restricts "contemporaneous" trading under Section 20A to one day. Defs' Opp'n at 9–10 (citing, inter alia, *In re AST Research Sec. Litig.,* 887 F.Supp. 231, 233, 234 (C.D.Cal. 1995) ("The same day standard is the only reasonable standard given the way the stock market functions."); and *In re Countrywide,* 588 F.Supp.2d 1132 (C.D.Cal. Dec.1, 2008), for the same proposition).[10] Accordingly, Defendants contend that the proposed Class Representatives, whose purchases occurred up to four days after Tracinda's sales,[11] lack standing to assert claims on any days other than April 6, June 10, and June 11, 1999, the only "claims period" dates on which Class Representatives made same-day purchases of DCX shares.

On the other side of the coin, Plaintiffs argue for a more expansive reading of the "contemporaneous" requirement. Plaintiffs also note that, although the Ninth Circuit has declined to expressly define "contemporaneous," its survey of case law discussing the requirement includes a reference to the Second Circuit's decision in *Shapiro v. Merrill Lynch,* 495 F.2d 228, 237 (2d Cir.1974), which found that trades within a four-day period were contemporaneous. *Neubronner,* 6 F.3d at 670. In *Neubronner,* The Ninth Circuit also noted Congress's apparent intent to "adopt the definition [of contemporaneous] 'which has developed through the case law' ":

Congress did not define the term "contemporaneous" as used in § 20A, but instead apparently intended to adopt the

definition "which has developed through the case law." H.R.Rep. No. 910, 100th Cong., 2d Sess. 27 (1988), reprinted in 1988 U.S.C.C.A.N. 6043, 6064. As examples of such case law, the House Report cited three cases which discuss the contemporaneous trading requirement in the context of implied private 10b–5 actions against insiders: *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88 (2d Cir.1981); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228 (2d Cir.1974); and *O'Connor & Associates v. Dean Witter Reynolds, Inc.,* 559 F.Supp. 800 (S.D.N.Y. 1983). H.R.Rep. No. 910 at 27 n. 22. *See In re Verifone Securities Litigation,* 784 F.Supp. 1471, 1488–89 (N.D.Cal.1992).

*Id.* at 670 n. 5.

The Court's review of the cases cited by the parties confirms that periods ranging from a few hours to a few days have been found to satisfy the "contemporaneous" requirement. The Court finds Judge Carter's balanced analysis of the issue helpful:

The Court in *Neubronner* did ... explain that "the contemporaneous trading rule ensures that only private parties who have traded with someone who had an unfair advantage will be able to maintain insider trading claims." [*Neubronner,* 6 F.3d at 670]. The *Neubronner* Court also endorsed a Second Circuit holding that "noncontemporaneous traders [d]o not require the protection of the 'disclose or abstain' rule because they do not suffer the disadvantage of trading with someone who has superior access to information." *Id.* at 669 (citing *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 94–95 (2d Cir.1981)).

Defendants have also directed the court to several district court cases that Defendants claim stand for the proposition that " 'contemporaneous trading' requires plain-

10. The Court notes that the standard adopted by Judge Pfaelzer in *In re Countrywide,* is somewhat more specific: "The contemporaneousness rule adopted here is: (1) on a motion to dismiss (2) related to an actively traded security (3) plaintiffs must allege that they traded on the other side of an insider's transaction (4) and plead facts showing they traded the same class of security on the same trading day, or one trading day after, the

insider's transaction." *In re Countrywide,* 588 F.Supp.2d at 1205.

11. Defendants do not refute Plaintiffs' assertions or evidence of the dates on which the Class Representatives purchases were made. *See* Pls' Mot. for Class Cert. at 10 n. 6.

tiffs asserting a Section 20A claim to have traded on the same day as defendants." The cases Defendants cite state that the underlying purpose behind Section 20A: to serve "as a proxy for the traditional requirement of contractual privity between plaintiffs and defendants." *In re AST Research Sec. Litig.*, 887 F.Supp. 231, 233 (C.D.Cal.1995). Accordingly, the "contemporaneous" time frame between an insider's sale and a plaintiff's purchase is relatively short because it is possible that the plaintiff purchased the actual shares sold by the insider. As the time between the insider's sale and plaintiff's purchase increases, the likelihood that the shares purchased by the plaintiff are the same shares the insider sold decreases substantially.

This is not, however, the only interpretation of the purpose behind Section 20A. An examination of relevant cases in the Second Circuit reveals a different interpretation. In *In re Am. Bus. Computers Corp. Sec. Litig.*, the Court held that "the better rule with respect to standing seems to be that a class action may be maintained on behalf of all persons who purchased stock on an exchange during the period that defendants were selling that stock on the basis of insider information." *In re Am. Bus. Computers Corp. Sec. Litig.*, 1994 WL 848690, *4 (S.D.N.Y. Feb. 24, 1994). Given that the Ninth Circuit has explicitly declined to define the contours of the "contemporaneous" requirement, after examining various approaches, the Court follows the more persuasive rule, that of Judge Brieant in *Am. Bus. Computers Corp.*

*Middlesex Retirement System v. Quest Software Inc.*, 527 F.Supp.2d 1164, 1195–96 (C.D.Cal.2007) (footnote and internal citation to the record omitted). Judge Carter concluded that the plaintiffs' allegations of "contemporaneous" trading would be sufficient upon amendment to include allegations of trades executed within eight days of the defendants' sales. *Id.* at 1196.

Here, it is undisputed that the proposed Class Representatives' purchases were all made within four days of one of the dates on which Defendants are alleged to have sold DCX shares on the basis of inside information that Defendants were alleged to have in their possession throughout the class period.[12] The Court concludes that, on the facts of this case, purchases made within four days after Defendants' sales of DCX are properly treated as contemporaneous trades. *See In re Silicon Graphics, Inc. Securities Litigation*, 970 F.Supp. 746, 761 (N.D.Cal.1997) ("Given that stock trades settle within three days, and allowing for the possibility of an intervening three-day weekend, only purchases within six days of insider sales are truly contemporaneous. Once an insider's sale settles, other traders are no longer in the market with that insider and risk no relative disadvantage from that insider's failure to disclose."). The Court finds that neither recent decisions within this district and from other districts nor the economic analysis provided by Defendants' expert, *see* Tabak Decl., compels a determination that only same-day trades are properly considered contemporaneous in this case. Finally, the Court is persuaded that, on the facts of this case involving a Section 20A claim predicated on violation of Section 10(b) over a period of time, a "contemporaneous" period of a few days addresses the need for a period that both serves as a legitimate proxy for the privity requirement and sets a reasonable limit on defendants' exposure to liability. Accordingly, the Court finds that the Class Representatives also satisfy Rule 23's adequacy and typicality requirements in this regard, and Plaintiffs have otherwise demonstrated that each of the four requirements of Rule 23(a) and the requirements of Rule 23(b)(3) have been met.

## B. Class Representatives and Class Counsel

■ Defendants identify several purported reasons that the proposed Class Representatives cannot adequately protect the interests of the Class. After reviewing the proffered

12. For purposes of this Motion, the Court uses the term "class period" to refer to the range of dates from March 19, 1999, the first transaction date listed in the proposed class definition, through to June 11, 1999, the last listed transaction date prior to the July 29, 1999 disclosure by DCX.

**596**

deposition testimony of proposed Class Representatives and related evidence, the Court finds that they have sufficient understanding and knowledge of the legal basis and factual allegations underlying this action such that they have standing, will be adequate representatives of the class under Rule 23(a)(4), and can otherwise adequately protect the interests of the Class.

Defendants' arguments that Fisher, Percival, Unruh and Tarantino lack standing because their trades were not contemporaneous with any of Defendants' sales into the market fail for the reasons set forth above. Defendants' characterizations of the testimony of Fisher and Colella is not supported by the evidence related to Fisher and Colella's purchases. Additionally, nothing cited by Defendants dictates that Tarantino is precluded from pursuing a claim on the basis of his capacity of a co-trustee of the Revocable Trust Agreement of Thomas P. Tarantino (as opposed to in his individual capacity), and the Court is aware of no authority for the proposition that Fisher's subsequent transfer of 100 DCX shares to his ex-wife divests him of standing. *Cf. In re Nucorp Energy Sec. Litig.,* 772 F.2d 1486, 1490 (9th Cir.1985) ("A cause of action arising from reliance on misrepresentation is personal to those persons who relied; it does not follow the security to remote purchasers who had no basis for reliance. Thus, the.. purchasers, who acquired their securities after [the relevant] public disclosure, were not automatically assigned the class members' federal causes of action when they made their purchases. If we held otherwise, we would remove the remedy from those to whom the statute provides it, *i.e.,* those who were defrauded, by gratuitously giving it to those who were not defrauded and have suffered no injury under the securities law." (internal citation omitted)).

Defendants' attacks on the proposed Class Members' knowledge of and willingness or ability to supervise the litigation and on the adequacy of proposed Class Counsel are, at best, hyperbolic and, at worst, consist of taking deposition testimony out of context and presenting it in a manner that borders on misleading. Such dissembling is helpful neither to the Court nor to Defendants' arguments.

The Court concludes that Plaintiffs have demonstrated the adequacy of the proposed Class Counsel and Class Representatives.

## IV. Conclusion

Therefore, for the reasons and in the manner set forth above, Plaintiffs' Motion for Class Certification is GRANTED in its entirety:

(a) the proposed Class "consisting of all persons and entities who purchased or otherwise acquired DCX common stock contemporaneously with Tracinda's sales of DCX stock on March 18, 1999, March 22, 2999, April 6, 1999, April 8, 1999, June 3, 1999, June 4, 1999, June 8, 1999, and June 11, 1999, and who were damaged thereby" is certified;

(b) Plaintiffs Burt Fisher, Alan Percival, Edith G. Combs, Leroy Unruh, Richard Pierce, John Colella, and Thomas Tarantino are appointed as Class Representatives; and

(c) Schiffrin, Barroway, Topaz & Kessler, LLP is appointed as Class Counsel and Lim, Ruger & Kim, LLP is appointed as Liaison Counsel.

**IT IS SO ORDERED.**