D. NEUBRONNER, Plaintiff–Appellant,

v.

Michael R. MILKEN, Defendant–
Appellee.

No. 91–56314.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1993.

Decided Oct. 4, 1993.

Robert H. Bretz, Robert H. Bretz, P.D., Marina del Rey, CA, for plaintiff-appellant.

Steven B. Rosenfeld, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant-appellee.

Before: WALLACE, Chief Circuit Judge, SNEED and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Dieter Neubronner appeals the district court's dismissal with prejudice of his fifth amended complaint against Michael Milken purporting to state a cause of action for securities law fraud under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.-10b–5. Neubronner alleged that Milken engaged in "insider" trading and made material misrepresentations in connection with the stock of Gibralter Financial Corporation and its wholly owned subsidiary Gibralter Savings. Neubronner lost approximately $7.5

million as a result of his investments in Gibralter securities. We have jurisdiction over Neubronner's timely appeal pursuant to 28 U.S.C. § 1291.

## I. BACKGROUND

Between April 1, 1987, and November 14, 1988, Dieter Neubronner purchased a total of 1,235,900 shares of Gibralter Financial Corporation's ("GFC" or "Gibralter") common stock, which he then sold between November 29, 1988, and February 8, 1989, for a loss of approximately $7.5 million. The value of the company's stock had declined dramatically after GFC announced on October 30, 1987, approximately $230 million in losses attributable to its real estate loans and investment portfolio.[1]

In March of 1989, Neubronner initiated this action, at first naming as defendant Drexel Burnham Lambert, the firm which had provided investment banking and broker/dealer services for Gibralter, and later adding Michael Milken, head of Drexel's west coast office. Beginning with Neubronner's third amended complaint, Milken has been the only defendant in this action, as all litigation against Drexel has been stayed due to its bankruptcy filing.

Before filing his present complaint, Neubronner failed five times to survive motions to dismiss. Each time, the district court advised Neubronner of the deficiencies in his complaints and directed him to plead his claims with greater specificity. For example, in its order dismissing the second amended complaint, the district court stated that Neubronner "still fails to allege with any specificity when and how defendants learned about the alleged 'inside information,' what the inside information was, when defendants traded on it, who traded on it, what Mr. Milken's

role was in the scheme—and, for some of the allegations . . ., when such information was publicly released." The court instructed Neubronner to plead specific facts to support any allegations made on information and belief. This fatal flaw remained uncorrected, and the district court repeated the admonition quoted above in its ultimate order dismissing the fifth amended complaint.

In its order dismissing the third amended complaint, the court gave Neubronner "leave to file one more amended complaint," and warned that if the next complaint was insufficient, the "action may be dismissed with prejudice." In dismissing the fourth amended complaint, the district court gave Neubronner "leave for a final time to file an amended complaint which is limited to a claim of inside trading on the seven established dates of contemporaneous trading or which pleads additional instances with specificity."[2] Finally, in dismissing the fifth amended complaint, the district court found once again that Neubronner failed to satisfy the contemporaneous trading requirement and failed to plead insider trading with sufficient particularity under Federal Rule of Civil Procedure 9(b). The court observed that the complaint "still alleges that insider trading took place over a three year period . . . despite this Court's instructions to plead 'particular days' of contemporaneous trading." The court further noted that Neubronner again failed "to plead the defendant's role in the alleged insider trading with sufficient particularity under Rule 9(b)." In addition, the court dismissed Neubronner's claims concerning alleged misrepresentations—stated for the first time in the fifth amended complaint—as time-barred and for failure to satisfy Rule 9(b).

---

**1.** *Out of the total number of shares that Neubronner purchased, he bought more than one-third (specifically, 487,200 shares) for $1.8 million after the October 30, 1987, announcement. That announcement made public the material adverse information which Neubronner appears to accuse Milken of using to his own advantage during the time when the information was non-public. Neubronner does not explain how he could have been harmed by trading with insiders after the negative information about Gibralter's financial condition was disclosed.*

**2.** *In response to a discovery request early in this litigation, Drexel provided Neubronner with a listing of all its trades in GFC common stock through February 2, 1988. Based on this information, Neubronner established seven dates in May, June and August 1987 on which he and Drexel traded contemporaneously. Neubronner's trades on these dates comprised a small fraction of his total trades in GFC common stock.*

## II. STANDARD OF REVIEW

■ We review *de novo* a district court's dismissal of a complaint. *Sun Savings and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). "A complaint should not be dismissed for failure to state a cause of action 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (citation omitted). We construe all allegations in the complaint favorably to the plaintiff. *Id.*

## III. DISCUSSION

*A. Contemporaneous Trading Requirement*

Neubronner contends that the district court improperly required him to plead with specificity all instances in which he and Milken traded contemporaneously in Gibralter securities.[3] In his fifth amended complaint, Neubronner refers by way of example to seven specific days on which he and Drexel traded contemporaneously, but he does not limit his claim of insider trading to those seven days. Rather, he alleges generally that he traded contemporaneously with Milken and Drexel throughout the "time period covered by this complaint." Neubronner defines that time period as the three-year span between January 1, 1986, and December 31, 1988.

Milken argues that contemporaneous trading is one of the primary "circumstances constituting fraud" when a plaintiff asserts an insider trading claim, and therefore must be pleaded with particularity under Federal Rule of Civil Procedure 9(b).[4] He suggests that this is a sensible rule because otherwise any investor who lost money could sue any insider who ever traded in the same security in the hope that discovery would reveal matching trade dates.

■ This court has not previously established a contemporaneous trading requirement for implied private causes of action under section 10(b) and Rule 10b-5.[5] However, the district courts in this circuit have followed the Second Circuit's interpretation of the requirement. In *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88 (2d Cir.1981), the Second Circuit held that any duty of disclosure on the part of insiders trading in the open market "is owed only to those investors trading contemporaneously with the insider; noncontemporaneous traders do not require the protection of the 'disclose or abstain' rule because they do not suffer the disadvantage of trading with someone who has superior access to information." *Id.* at 94–95. In reaching this conclusion, the court commented that to "extend the period of liability well beyond the time of the insid-

---

3. The district court apparently accepted that the seven established dates discussed above satisfy the contemporaneous trading requirement even though Neubronner's trades on those dates were contemporaneous with trades by *Drexel* for its own account, rather than with trades by *Milken* himself. Possibly this is because Neubronner claims that Milken used inside information not only to trade GFC shares for his own advantage, but also to direct the trades of Drexel and unidentified Milken family members and business associates.

4. Federal Rule of Civil Procedure 9(b) provides:

   In all averments of fraud or mistake, the *circumstances constituting fraud or mistake shall be stated with particularity.* Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
   (Emphasis added.)

5. In 1988, Congress enacted section 20A of the Securities Exchange Act of 1934, 15 U.S.C. § 78t–1, which expressly provides for private suits against inside traders who trade "contem-

poraneously" with private party plaintiffs. The provision is applicable to all actions occurring on or after November 19, 1988. However, the provision expressly does not preempt existing remedies, including the availability of implied causes of action under existing law. Neubronner did not proceed under § 20A.

Congress did not define the term "contemporaneous" as used in § 20A, but instead apparently intended to adopt the definition "which has developed through the case law." H.R.Rep. No. 910, 100th Cong., 2d Sess. 27 (1988), *reprinted in* 1988 U.S.C.C.A.N. 6043, 6064. As examples of such case law, the House Report cited three cases which discuss the contemporaneous trading requirement in the context of implied private 10b–5 actions against insiders: *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88 (2d Cir.1981); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228 (2d Cir.1974); and *O'Connor & Associates v. Dean Witter Reynolds, Inc.,* 559 F.Supp. 800 (S.D.N.Y.1983). H.R.Rep. No. 910 at 27 n. 22. *See In re Verifone Securities Litigation,* 784 F.Supp. 1471, 1488–89 (N.D.Cal.1992).

er's trading simply because disclosure was never made could make the insider liable to all the world." *Id.* at 94. In *Wilson,* the court held that trades approximately one month apart were not contemporaneous, and that because the plaintiff did not trade contemporaneously with the insiders he had no standing to sue them. *Id.* at 95. *See also Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228, 237 (2d Cir.1974) (trades within a four day period were contemporaneous).

In following *Wilson,* one district court has noted that the duration of a "contemporaneous" period is not fixed, "although the courts have interpreted the 'contemporaneous trading' requirement quite strictly" and have found the requirement not met if the plaintiff's trades occurred more than a few days apart from the defendant's. *Alfus v. Pyramid Technology Corp.,* 745 F.Supp. 1511, 1522 (N.D.Cal.1990). The district court in *Alfus* found that the plaintiff failed to satisfy the contemporaneous trading requirement, and therefore lacked standing to bring a private insider trading claim, where she alleged a four and one-half month period of insider trading. *Id.* at 1523. *See also In re Genentech, Inc. Securities Litigation,* 1989 WL 201577, *6 (N.D.Cal.1989) (following Second Circuit, held plaintiff did not satisfy contemporaneous trading requirement where complaint alleged only that plaintiffs purchased Genentech stock on unidentified days between March 1987 and September 1988); *In re Verifone Securities Litigation,* 784 F.Supp. 1471, 1489 (N.D.Cal.1992) (trades 14 days and more apart not contemporaneous). *Cf. In re Worlds of Wonder Securities Litigation,* 1990 WL 260675, *5 (N.D.Cal.1990) (court cited Second Circuit's *Wilson* rule but declined to address contemporaneous trading issue noting that "the status of the law is unclear on the issue").

■ We now adopt the Second Circuit's approach in *Wilson* and hold that the scope of liability for insider trading claims under section 10(b) and Rule 10b–5 is confined to persons who traded contemporaneously with the insider. We further hold that contemporaneous trading is necessarily a "circumstance constituting fraud" because an insider

can not be liable to a private party under section 10(b) and Rule 10b–5 without having traded contemporaneously; thus, contemporaneous trading must be pleaded with particularity under Rule 9(b).

■ As the *Wilson* court explained, the contemporaneous trading rule ensures that only private parties who have traded with someone who had an unfair advantage will be able to maintain insider trading claims. Neubronner does not propose an alternative rule, but instead suggests he should be permitted to allege generally that contemporaneous trading occurred, and then amend his complaint following discovery of any particular instances of contemporaneous trading. In light of the obvious need to protect parties from having to defend suits against plaintiffs who may be merely guessing that contemporaneous trading occurred, and in the absence of an alternative rule for limiting the scope of liability, the *Wilson* court's reasoning is persuasive. We do not determine in this case the exact contours of "contemporaneous trading" because under the approach outlined in *Wilson,* Neubronner's allegation of a three-year period of contemporaneous trading is clearly insufficiently specific to establish contemporaneity. The delineation of how far apart in time trades may be without being too far apart to satisfy the contemporaneous trading requirement is best worked out in cases much closer to a probable borderline than this one.

■ Neubronner argues that application of the contemporaneous trading rule to this case would be unfair and unrealistic because the district court refused to allow him to obtain any discovery from Milken. He contends that it is impossible for him to plead contemporaneous trading with specificity without the benefit of discovery because information regarding Milken's trading activity is exclusively within Milken's control. However, the single case that Neubronner cites to support this argument, *New England Data Services, Inc. v. Becher,* 829 F.2d 286 (1st Cir.1987), is inapposite. The First Circuit's determination in *New England Data Services* that the district court abused its discretion in denying the plaintiff's request for discovery in order to defeat a motion to dismiss

was expressly limited to the facts of that case. The court decided that where a plaintiff has sufficiently alleged facts demonstrating a scheme that *necessarily* involves communication, some discovery is warranted to support allegations of mail and wire fraud as predicate RICO acts because a plaintiff can't possibly know of specific phone calls and letters. *Id.* at 292. In the present case, however, Neubronner has not alleged any facts that necessarily suggest Milken ever traded at any time in GFC common stock, much less that raise an inference that Milken traded contemporaneously with Neubronner.

■ We do recognize, however, that some balance must be achieved between the need to protect defendants from having to defend factually baseless litigation and the need to afford plaintiffs an adequate opportunity to develop factual bases for legitimate claims. This court has stated that one purpose of Rule 9(b)'s requirement that plaintiffs plead fraud with particularity is to "prevent[ ] the filing of a complaint as a pretext for the discovery of unknown wrongs." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). But surely we can not expect a private plaintiff in an insider trading case to plead with the specificity Rule 9(b) requires without allowing some limited opportunity for discovery.

■ The record reveals that the district court did not foreclose Neubronner's opportunity to collect facts from Milken which would enable him to plead contemporaneous trading with specificity, though Neubronner did not make the most of that opportunity. Neubronner never followed through on a demand for document production made in November 1989 nor on a set of interrogatories propounded to Milken in August 1990. In particular, he never requested a ruling on Milken's objections to the document demand. Later, Milken's motion for a protective order to forestall a deposition and document production noticed for September 1990 as well

as the interrogatory request became moot when the district court dismissed Neubronner's third amended complaint.[6] Neubronner again noticed a deposition for February 20, 1991, the day after a scheduled hearing on Milken's motion to dismiss the fourth amended complaint. Milken then requested a protective order on the ground that if the motion to dismiss was granted the deposition issue would be moot, and if denied, it would be oppressive and burdensome to require him to appear any time before his March 4, 1991, surrender to the Federal Bureau of Prisons due to his conviction on criminal charges. The district court on February 19, 1991, granted Milken's motion for a protective order and stayed his deposition pending further court order. Thus, the district court only prevented Neubronner from deposing Milken until further order, but never restricted him from pursuing discovery through other means. The district court's action was proper under Federal Rule of Civil Procedure 26(c), which permits a district court to limit discovery for good cause.

### B. *Rule 9(b) Specificity Requirement*

■ Neubronner argues that his allegations that Milken, in his capacity as an investment banker for Gibralter, obtained inside information about the company and then used that information to trade in Gibralter securities are sufficient to apprise Milken of the wrongdoing with which he is charged and therefore satisfy Rule 9(b). He asserts that his allegations enable Milken to prepare a meaningful answer because Milken himself knows the details of what information he received and how he used it.

■ This court has interpreted Rule 9(b) to require that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen*, 780 F.2d at 731. A pleading "is suffi-

---

**6.** In an affirmation in support of Milken's motion for a protective order, Milken's attorney stated that he offered to make available, immediately after Milken's sentencing in an unrelated criminal case, information sufficient to show that neither Milken nor any entities in which he had an ownership interest ever traded in GFC common stock during the period in which Neubronner traded. Neubronner refused the offer and instead insisted that discovery proceed before Milken's sentencing.

cient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir.1977) (citation omitted); *see Deutsch v. Flannery*, 823 F.2d 1361, 1365–66 (9th Cir.1987). The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity. *Semegen*, 780 F.2d at 731; *Gottreich*, 552 F.2d at 867; *see In re Genentech Securities Litigation*, 1990 WL 32070, *4–5 (N.D.Cal.1990).

A reading of Neubronner's fifth amended complaint reveals that he has not satisfied Rule 9(b)'s demands. The only connection that Neubronner draws between Milken and the wrongful conduct which the complaint charges is Neubronner's allegation that Milken supervised and was responsible for Drexel's Beverly Hills office, and that he acted as an investment banker for Gibralter. Neubronner states no specific factual basis for his allegation that Milken traded in GFC securities for his own benefit.

The complaint catalogs in summary fashion the investment banking services that Drexel performed for GFC, as well as adverse information about GFC's financial condition that apparently eventually became public. The complaint then asserts that Drexel and Milken *must have known* about that information in advance of its public release, and therefore *must have used* it to trade for their own benefit. Neubronner does *not* allege specifically what information Milken obtained, when and from whom he obtained it, and how he used it for his own advantage. It is difficult to imagine how Milken could respond to the complaint other than by generally denying that he ever obtained any material, adverse nonpublic information about Gibralter which he then used to trade Gibralter securities for his own benefit. The complaint offers no specific facts demonstrating wrongdoing which Milken could deny or otherwise controvert.

■ Neubronner argues that his claim falls within a recognized exception to Rule 9(b)'s particularized pleading requirement, because the facts constituting the circumstances of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him. This court has held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989); *see DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247–48 (2d Cir. 1987).

However, this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief. *Wool*, 818 F.2d at 1439; *Moore*, 885 F.2d at 540; *DiVittorio*, 822 F.2d at 1247–48; *In re Worlds of Wonder Securities Litigation*, 694 F.Supp. 1427, 1433 (N.D.Cal.1988). Neubronner fails to satisfy this relaxed version of Rule 9(b). Indeed, Neubronner essentially admits in his fifth amended complaint that he has alleged no more than "suspicious circumstances"; those circumstances—i.e., that Milken was an investment banker for Gibralter and that Gibralter eventually sank into financial trouble—do not constitute a sufficient factual basis for allegations of insider trading.

■ We conclude that the district court accurately determined that Neubronner failed to plead Milken's role in the alleged insider trading with sufficient particularity under Rule 9(b). Furthermore, the district court's decision to dismiss the fifth amended complaint *with prejudice* was appropriate in light of Neubronner's repeated failure to cure the deficiencies in his pleadings. Courts have dismissed complaints with prejudice in similar situations. *See Semegen*, 780 F.2d at 731 (dismissal with prejudice where plaintiffs failed to plead with the requisite particularity after "repeated opportunities"); *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 675–76 (2d Cir.1991) (third amended complaint dismissed with prejudice).

## C. Misrepresentation Claims

Neubronner half-heartedly argues that the district court erred in dismissing his claims of market manipulation and fraud on the market based on allegedly false and misleading statements in a GFC prospectus dated April 7, 1986 (collectively referred to as his misrepresentation claims). These claims not only clearly fail to satisfy Rule 9(b), but they probably even fail to satisfy Federal Rule of Civil Procedure 8(a)'s requirement of a short and plain statement of a claim showing that the plaintiff is entitled to relief (though we need not explore this latter point).

Neubronner's complaint does not explain how, in purchasing GFC common stock, he could possibly have relied on the prospectus, which concerned an offering of convertible debentures in which he did not invest, and which was distributed a full year before he purchased any GFC shares. Moreover, he does not state the content of any allegedly false and misleading statements, nor precisely when and where he obtained the false information. *See Gottreich,* 552 F.2d at 867 (must allege time, place and content of misrepresentations); *Semegen,* 780 F.2d at 731.

In addition, he provides no factual basis for his allegation on information and belief that Milken read and approved the prospectus, other than his blanket assertion that Milken was responsible for all offerings and sales of securities managed by Drexel's west coast office. Nor does he otherwise attribute any false or misleading statements to Milken or state how Milken benefitted from the purported misrepresentations. Neubronner merely asserts that at some point in time he read the prospectus, and sometime later relied on it in deciding to purchase GFC common stock, and that the prospectus did not include certain negative information about GFC's financial condition that at some unidentified time presumably became public. Neubronner's allegations of misrepresentation do not satisfy the Rule 9(b) requirement that plaintiffs must plead the circumstances constituting fraud with particularity.

We affirm the district court's dismissal of the misrepresentation claims on the ground that they failed to satisfy Rule 9(b). There-fore, we need not address the district court's additional determination that these claims were time-barred due to the three and one-half years that elapsed between the October 30, 1987, public disclosure of GFC's poor financial health and Neubronner's first assertion of his misrepresentation claims in his fifth amended complaint.

## IV. CONCLUSION

We affirm the district court's dismissal with prejudice of Neubronner's fifth amended complaint on the grounds that Neubronner failed to specifically plead contemporaneous trading, Milken's role in the alleged wrongful conduct, and the factual basis of his misrepresentation claims. Under Rule 9(b), dismissal was proper in these circumstances.

AFFIRMED.