Sharon **HODGES**, Plaintiff,

v.

**AKEENA SOLAR, INC.,**
et al., Defendants.

No. C 09–02147 JW.

United States District Court,
N.D. California,
San Jose Division.

March 10, 2011.

David R. Scott, Scott & Scott LLP, Colchester, CT, Mary K. Blasy, Hal Davis Cunningham, Walter W. Noss, Scott Scott LLP, San Diego, CA, for Plaintiff.

Steven Mark Schatz, Benjamin Matthew Crosson, Dominique Chantale Alepin, Jessica L. Snorgrass, Joni L. Ostler, Kelley Moohr Kinney, Louis David Nefouse, Douglas John Clark, Jessica L. Snorgrass, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO WITHDRAW SHARON HODGES AS A REPRESENTATIVE PLAINTIFF; GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

JAMES WARE, Chief Judge.

### I. INTRODUCTION

Joel Gentleman ("Gentleman"), David Gordon ("Gordon") and Sharon Hodges ("Hodges") (collectively, "Plaintiffs") bring this putative class action against Akeena Solar, Inc. ("Akeena") and Individual Defendants.[1] Plaintiffs sue on behalf of all persons who purchased the common stock of Akeena between December 26, 2007 and March 13, 2008, alleging, *inter alia,* violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Plaintiffs allege that Defendants issued false and misleading statements and made omissions of material fact that inflated Akeena's stock price.

Presently before the Court are Plaintiffs' Motion to Withdraw Sharon Hodges as a Representative Plaintiff[2] and Plaintiffs' Motion for Class Certification.[3] The Court conducted a hearing on February 28, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Plaintiffs' Motion to Withdraw Sharon Hodges as a Representative Plaintiff and GRANTS Plaintiffs' Motion for Class Certification.

1. Akeena Chief Executive Officer and Chairman Barry Cinnamon ("Cinnamon") and Chief Financial Officer Gary Effren ("Effren") (collectively, "Individual Defendants").

2. (hereafter, "Motion to Withdraw," Docket Item No. 92.)

### II. BACKGROUND

#### A. Factual Allegations

In an Amended Complaint[4] filed on December 11, 2009, Plaintiffs allege as follows:

Lead Plaintiffs are individuals who purchased common stock in Akeena between December 26, 2007 and March 13, 2008. (AC ¶ 1.) Defendant Akeena is a company which markets, sells and installs solar power systems for residential and small commercial customers in the United States. (*Id.* ¶ 2.) It is headquartered in Los Gatos, California. (*Id.* ¶ 32.) Defendant Cinnamon is the founder of Akeena, as well as Akeena's Chief Executive Officer and President. (*Id.* ¶¶ 1, 29.) Defendant Effren was Chief Financial Officer of Akeena during the Class Period. (*Id.* ¶ 30.)

After Cinnamon was sued for divorce by his wife, he decided that the only way he could fund a divorce settlement with his wife without significantly reducing his control of Akeena was to inflate Akeena's stock price, so he could buy her out with proceeds from stock sales. (AC ¶¶ 10, 16–17.) However, Cinnamon knew that stock analysts covering Akeena would not increase its stock ratings unless it showed a clear path to profitability. (*Id.* ¶ 10.) On December 26, 2007, Cinnamon announced that Akeena had received a significant increase in its credit line. (*Id.* ¶ 18.) Defendants concealed the fact that this was not a true increase, but merely a cash collateralization agreement whereby Akeena would be required to deposit every additional dollar "borrowed" back into the bank. (*Id.* ¶ 18.) To further raise Akeena's rating, Cinnamon announced that Akeena had entered into a substantial licensing agreement with Suntech, a maker of solar power modules, which caused a 43%

3. (hereafter, "Motion for Class Certification," Docket Item No. 94.)

4. (Amended Complaint for Violations of the Federal Securities Laws, hereafter, "AC," Docket Item No. 20.)

spike in Akeena's stock price in a single trading session. (*Id.* ¶¶ 15, 19.) However, Defendants did not reveal that the Suntech licensing agreement was flawed for a number of reasons, including the fact that it was legally unenforceable and that it included a supply contract priced well above market rate, which would significantly decrease demand for the product. (*Id.* ¶ 75.) These false and misleading statements and omissions artificially inflated Akeena's stock price, which in turn allowed Cinnamon to fund his divorce settlement by selling only 400,000 shares of Akeena stock, rather than the 700,000 shares he would have been obliged to sell had the stock price not increased. (*Id.* ¶¶ 20–21.) On March 13, 2008, Akeena released its 2007 audited financial results and its "dismal" financial results for the fourth quarter of 2007. (*Id.* ¶ 23.) Effren also disclosed that Akeena's licensing agreement with Suntech would have no meaningful financial impact on Akeena's profitability during 2008. (*Id.*)

On the basis of the allegations outlined above, Plaintiffs allege three causes of action: (1) Making false and misleading statements and failing to disclose material facts to artificially inflate and maintain Akeena's stock price in violation of § 10(b) of the Exchange Act and SEC Rule 10b–5 against all Defendants; (2) Control person liability under § 20(a) of the Exchange Act for § 10(b) violations against the Individual Defendants; (3) Liability to contemporaneous traders for insider trading under Section 20A of the Exchange Act against Cinnamon.

## B. *Procedural History*

On May 18, 2009, Sharon Hodges filed a Complaint[5] on behalf of herself and all those who purchased the common stock of Akeena between December 26, 2007 and March 13, 2008. On December 11, 2009, Sharon Hodges, David Gordon and Joel Gentleman filed an Amended Complaint on behalf of the same group of individuals. (*See* AC.) On May 20, 2010, the Court denied Defendants' Motion to Dismiss. (*See* Docket Item No. 44.)

Presently before the Court are Plaintiffs' Motion to Withdraw Sharon Hodges as a Representative Plaintiff and Plaintiffs' Motion for Class Certification.

## III. STANDARDS

### A. *Motion for Voluntary Dismissal*

A district court should grant a motion for voluntary dismissal under Fed. R.Civ.P. 41(a)(2), unless a defendant can show that it will suffer some plain legal prejudice as a result. *Waller v. Financial Corp. of America,* 828 F.2d 579, 583 (9th Cir.1987). Legal prejudice means "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist. v. United States,* 100 F.3d 94, 97 (9th Cir.1996). This threshold is not satisfied merely because the defendant would be inconvenienced or where the plaintiff would gain some tactical advantage as a result of the dismissal. *Hamilton v. Firestone Tire & Rubber Co., Inc.,* 679 F.2d 143, 145 (9th Cir.1982).

### B. *Motion for Class Certification*

The decision to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See* Fed.R.Civ.P. 23; *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1309 (9th Cir.1977). The party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Dukes v. Wal–Mart, Inc.,* 509 F.3d 1168, 1176 (9th Cir.2007) (citing *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001), amended, 273 F.3d 1266 (9th Cir. 2001)). A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 158–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,*

---

5. (Complaint for Violations of the Federal Securities Laws, Docket Item No. 1.)

691 F.2d 1335, 1342 (9th Cir.1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975)). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992) (citation omitted). In fact, "courts are not only at liberty to but must consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying merits of the case." *Dukes*, 509 F.3d at 1178 n. 2 (internal quotations and citation omitted).

## IV. DISCUSSION

### A. Motion to Withdraw

Plaintiffs move to withdraw Hodges as Lead Plaintiff, on the grounds that her withdrawal will not cause any prejudice to Defendants. (Motion to Withdraw at 3–5.) Plaintiffs contend that Hodges, a 63–year-old retired secretary, decided that she no longer wanted to participate as Lead Plaintiff following a seven-hour deposition taken by Defendants on November 3, 2010, which left Hodges "exhausted and dismayed with the legal process." (*Id.* at 2.) Defendants do not oppose this Motion.[6] In light of Defendants' non-opposition and for good cause shown, the Court GRANTS Plaintiffs' Motion to Withdraw Sharon Hodges as a Representative Plaintiff.[7]

### B. Motion for Class Certification

Plaintiffs move to certify the following class:

All persons who purchased or otherwise acquired Akeena Solar, Inc. ("Akeena") securities between December 26, 2007 and March 13, 2008, inclusive (the "Class Period"), who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Akeena, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

(Motion for Class Certification at 2.) Plaintiffs seek appointment of Scott + Scott LLP as lead class counsel. (*Id.*)

The Court considers whether class certification is appropriate in this case.

### 1. Rule 23(a) Certification

Rule 23(a) provides four requirements that must be satisfied for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

#### a. Numerosity

Plaintiffs contend that the putative class satisfies the numerosity requirement because Akeena stock was traded during the class period on the NASDAQ Stock Exchange ("NASDAQ") at an average trading volume of 14.6 million shares per week. (Motion for Class Certification at 9.) Although Defendants do not contest class certification on the basis of numerosity, the Court examines this factor for completeness.[8]

---

**6.** (Defendants' Response to Plaintiff Sharon Hodges' Motion to Withdraw as a Representative Plaintiff, and Opposition to Plaintiff Sharon Hodges' Motion for Protective Order at 1, Docket Item No. 96.)

**7.** Plaintiffs also move for a protective order relieving Hodges from any further discovery obligations. (Motion to Withdraw at 1.) On February 8, 2011, Judge Grewal denied this Motion. (*See* Order Denying Plaintiff Sharon Hodges' Motion for a Protective Order, Docket Item No. 116.)

**8.** Federal Rule of Civil Procedure 23(c) "imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir.2003).

■ Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). A class of one thousand members "clearly satisfies the numerosity requirement." *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D.Cal.1978).

In this case, Akeena stock was traded on the NASDAQ daily. Plaintiffs provide evidence that Akeena stock's weekly volume of trading on the NASDAQ was over 14 million shares.[9] Based on this information, the Court finds that Plaintiffs have sufficiently shown that the number of investors who purchased Akeena stock during the Class Period are potentially in the thousands.

Accordingly, the Court finds that Plaintiffs have met the numerosity requirement of Rule 23(a).

### b. Commonality

■ Plaintiffs contend that the commonality requirement of Rule 23(a) is met because the Court will be required to address a series of questions that will affect all members of the putative class. (Motion for Class Certification at 10.) Defendants do not dispute commonality, but the Court will examine it for completeness.

■ Rule 23(a)(2) requires that class certification be predicated on "questions of law or fact common to the class." This requirement "has been construed permissively." *Hanlon*, 150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

In this case, the following issues are common to the class: (1) whether Defendants violated the federal securities laws; (2) whether Defendants omitted or misrepresented material facts about Akeena's financial situation during the Class Period; (3) whether Defendants acted with the requisite state of mind; (4) whether the market price of Akeena's securities during the Class Period was artificially inflated due to the material omissions and misrepresentations described in the Amended Complaint; and (5) whether the market price of Akeena's securities declined when the misconduct was revealed to the market. (Motion for Class Certification at 10.) Thus, for each member of the putative class, the core factual and legal issues are the same.

Accordingly, the Court finds that Plaintiffs have met the commonality requirement of Rule 23(a).

### c. Typicality

■ Plaintiffs contend that the typicality requirement is satisfied because the claims of all Class members derive from the same legal theories and allege the same set of operative facts—i.e., that Plaintiffs all purchased Akeena's securities at artificially inflated prices caused by Defendants' misconduct and false and misleading statements during the Class Period, and suffered losses when Akeena's stock price declined after Akeena's true condition was partially revealed to the market. (Motion for Class Certification at 11–12.)

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Like the commonality requirement, the typicality requirement is permissive: "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The test is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508. A court should not find typicality satisfied if "there is a danger that absent class members will

---

9. (Declaration of Beth Charlesworth in Support of Motion to Certify Class ¶¶ 13–15, hereafter, "Charlesworth Decl.," Docket Item No. 88.)

suffer if their representative is preoccupied with defenses unique to it." *Id.* (internal citation omitted).

Here, Plaintiffs provide evidence that Gordon purchased 1,000 shares of Akeena stock during the Class Period and held those shares through the end of the Class Period, suffering almost $8,000 in losses.[10] Plaintiffs also provide evidence that Gentleman purchased 1,000 shares of Akeena stock during the Class Period, and suffered almost $10,000 in losses. (*Id.*) In addition, Plaintiffs provide evidence that, like other members of the Class, Gentleman and Gordon made purchases of Akeena stock within a few days of Cinnamon's sales of Akeena stock. (*Id.,* Ex. C.) All members of the putative class were allegedly injured by the same course of conduct, even if not to the same degree.

Accordingly, the Court finds that Plaintiffs have met the typicality requirement of Rule 23(a).

### d. Adequacy

 Plaintiffs contend that they are adequate class representatives because they are represented by counsel experienced in the field of class action securities litigation, and there are no conflicts between Plaintiffs and the absent class members. (Motion for Class Certification at 13–14.) Defendants contend that the proposed class representatives are inadequate representatives of the putative class, because they lack knowledge of the case and are indifferent to its outcome.[11]

 Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Two questions are considered when determining the adequacy of representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020.

 The threshold of knowledge required to qualify a class representative is low; a class representative will be deemed inadequate only if "startlingly unfamiliar" with the case. *Moeller v. Taco Bell Corp.,* 220 F.R.D. 604, 611 (N.D.Cal.2004). The fact that plaintiffs are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy. *In re Conseco Life Ins. Co. Life-Trend Ins. Sales and Marketing Litigation,* 270 F.R.D. 521, 531 (N.D.Cal.2010).

Here, the Court finds that there is no evidence that Plaintiffs or their counsel have any conflicts of interest with other class members. Plaintiffs offer ample evidence that the putative class representatives are familiar with both the basis for the suit and their responsibilities as Lead Plaintiffs. Both putative class representatives testified to their understanding that the suit involves misleading and fraudulent statements on the part of Defendants.[12] Both putative class representatives testified that they understood that the suit was being brought as a class action, and that they understood their responsibilities as lead plaintiffs in such an action, including the responsibility to determine whether to accept a proposed settlement or go to trial.[13] Plaintiffs also offer evidence that both putative class representatives plan to pursue the litigation vigorously.[14] Thus, Defendants' contentions are without merit.

Finally, upon review of the law firm resume of Scott + Scott, the Court finds that counsel has sufficient experience in complex class actions such that they are capable of

---

10. (Declaration of Hal D. Cunningham in Support of Motion of the Akeena Investor Group for Appointment of Lead Plaintiff, hereafter, "Cunningham Decl.," Ex. B, Docket Item No. 7.)

11. (Defendants' Opposition to Plaintiffs' Motion for Class Certification at 9–17, hereafter, "Opp'n," Docket Item No. 100.)

12. (*See, e.g.,* Declaration of Mary K. Blasy in Support of Reply Memorandum for Class Certifi-

cation, hereafter, "Blasy Decl.," Ex. D at 10:15–11:12, 13:7–19; Ex. E at 12:18–13:25, 67:10–21, Docket Item No. 110.)

13. (Blasy Decl., Ex. D at 149:14–23, 156:4–24, 163:1–8; Ex. E at 157:5–10, 161:6–162:17, 175:18–19.)

14. (Blasy Decl., Ex. D at 187:23–188:10, 192:16–195:19; Ex. E at 210:7–18.)

adequately and vigorously prosecuting this litigation.[15]

Accordingly, the Court finds that Plaintiffs have met the adequacy requirement of Rule 23(a).

## 2. Rule 23(b) Certification

In addition to meeting the requirements under Rule 23(a), Plaintiffs must establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b). Plaintiffs seek certification of a Rule 23(b)(3) class.

 Under Rule 23(b)(3), a plaintiff seeking certification bears the burden of proving two conditions: (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Zinser*, 253 F.3d at 1188–89 (citing *Hanon*, 976 F.2d at 508).

### a. Predominance

 Plaintiffs contend that common questions of law and fact predominate because Defendants' alleged conduct affected all members of the putative class by artificially inflating the price of Akeena common stock through false and misleading statements and omissions. (Motion for Class Certification at 15.) Defendants contend that Plaintiffs have failed to show that the fraud-on-the-market presumption can be used to show predominance. (Opp'n at 17.) Defendants contend that Plaintiffs' own expert testimony shows that there was no statistically significant decline in Akeena's stock price when allegedly the truth about the misrepresentations was revealed, indicating that the alleged misrepresentations could not have distorted the stock price and that, therefore, the fraud-on-the-market presumption cannot be invoked by Plaintiffs. (*Id.* at 18–26.) In particular, Defendants contend that immediately following the disclosure of alleged "truths," the market failed to react to the new information. (*Id.*)

 "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. The question of predominance presumes the existence of common issues; thus, a mere showing of commonality is not enough. *Hanlon*, 150 F.3d at 1022; *see also Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231 (predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement). Predominance focuses on the relationship between the common and individual issues. *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*

 Reliance on misstatements, including material omissions, is an element of a cause of action under Rule 10b–5. *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). "Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action." *Id.* at 247, 108 S.Ct. 978. The fraud-on-the-market presumption of reliance is "based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir.1999) (quoting *Basic*, 485 U.S. at 241–42, 108 S.Ct. 978). "Thus, the presumption of reliance is available only when a plaintiff alleges that a defendant made material representations or omissions concerning a security that is actively traded in an 'efficient market,' thereby establishing a 'fraud on the market.'" *Id.*[16]

---

**15.** (*See* Cunningham Decl., Ex. E.)

**16.** The Ninth Circuit has endorsed the five factors articulated in *Cammer v. Bloom*, 711

The presumption of reliance, however, is rebuttable. *Basic,* 485 U.S. at 248, 108 S.Ct. 978 ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."). A presumption of reliance cannot exist where such a presumption would be unreasonable in light of corrective information that has entered the market.[17] When the applicability of the fraud-on-the-market presumption of reliance is questioned at the class certification phase, a court "must conduct a rigorous examination into whether plaintiffs are entitled to use [the presumption]."[18] *In re Micron,* 247 F.R.D. at 633 (citing *Dukes,* 509 F.3d at 1177 n. 2). To rebut the presumption of reliance afforded to plaintiffs who establish a fraud on the market, a defendant has the burden of "eliminat[ing] the possibility that a rational jury could find that the alleged misrepresentations and omissions misled the market." *Kaplan v. Rose,* 49 F.3d 1363, 1376–78 (9th Cir.1994).

In this case, Plaintiffs made a *prima facie* showing that the fraud-on-the-market presumption of reliance applied because Plaintiffs sufficiently established that Akeena's stock was actively traded on an efficient market-the NASDAQ. (*See* Motion for Class Certification at 8; Charlesworth Decl. ¶¶ 13–15.) For the purposes of this Motion, the Court finds that Plaintiffs' expert has analyzed the *Cammer* factors in sufficient detail to show that the market was efficient. (Charlesworth Decl. ¶¶ 9–37.) Plaintiffs provided evidence that Akeena's stock traded at a high weekly volume, and that numerous analysts covered the stock. (*Id.* ¶¶ 13–21.) Plaintiffs also showed that over twenty market makers traded Akeena's stock, and that Akeena met the requirements for registering securities on Form S–3. (*Id.* ¶¶ 22–28.) Finally, Plaintiffs established a cause and effect relationship between unexpected corporate events and an immediate response in Akeena's stock price by analyzing a series of dates on which announcements relevant to Akeena occurred. (*Id.* ¶¶ 29–32.)

Defendants respond that they can show that the alleged misrepresentations did not distort the stock price, and that therefore the fraud-on-the-market presumption is rebutted. (Opp'n at 17.) Defendants respond that the testimony of Plaintiffs' own expert shows that Akeena's stock price did not decline immediately on the relevant trading day following the day when allegedly the "truths" about misrepresentations were revealed, which logically shows that the alleged misrepresentations did not distort the stock price. (*Id.* at 18–26.) Plaintiffs respond that it is premature, at this stage of the litigation, for the Court to determine whether the alleged misrepresentations distorted the stock price, and that Defendants have not factually negated loss causation.[19]

F.Supp. 1264, 1286–87 (D.N.J.1989), when determining whether there is an efficient market. These factors include: (1) whether the stock trades at high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file a Form S–3 registration statement with the SEC; and (5) whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Binder,* 184 F.3d at 1065 (quoting *Cammer,* 711 F.Supp. at 1286–87).

**17.** *See In re Fed. Nat'l Mortgage Ass'n Sec., Derivative and "ERISA" Litig.,* 247 F.R.D. 32, 38 (D.D.C.2008) ("Examples include a lack of market response to the alleged misrepresentations, that the market was aware that the misrepresentations were false, or that investors would have purchased or sold the securities even with full knowledge of the misrepresentation.").

**18.** Although courts must refrain from addressing the merits of a plaintiff's causes of action on a motion for class certification, courts must also "consider evidence which goes to the requirements of Rule 23 at the class certification stage even if the evidence may also relate to the underlying merits of the case." *Dukes,* 509 F.3d at 1177 n. 2. In this case, the Court finds that the applicability of the fraud-on-the-market presumption must be considered in order to evaluate the predominance requirement of Rule 23(b)(3). *See, e.g., In re Micron Techs., Inc. Sec. Litig.,* 247 F.R.D. 627, 633 (D.Idaho 2007); *In re Fed. Nat'l Mortgage Ass'n,* 247 F.R.D. at 38.

**19.** (Reply Memorandum in Further Support of Motion for Class Certification at 8–18, hereafter, "Reply," Docket Item No. 109.)

"District courts in [the Northern District of California] have rejected the ... requirement that plaintiffs prove loss causation at class certification." *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 578–79 (N.D.Cal. 2009). Although the Ninth Circuit has yet to address specifically the question of whether a plaintiff must prove loss causation at the class certification stage in order to avail itself of the benefit of the fraud-on-the-market presumption, "this circuit's precedent strongly suggests it would reject" the rule that a plaintiff must prove loss causation at class certification. *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530 (N.D.Cal.2009).

In a recent case, the Ninth Circuit considered whether a plaintiff had presented sufficient evidence of loss causation to survive a summary judgment in a securities fraud action. *See Huberman v. Tag–It Pacific, Inc.*, 314 Fed.Appx. 59 (9th Cir.2009). In *Huberman*, the plaintiff presented evidence that consisted of press releases issued by the defendant containing negative information about the defendant's business, along with a stock chart that reflected "corresponding significant losses" in the defendant's stock value. *Id.* at 61. The *Huberman* court found that this was sufficient evidence of loss causation to survive a summary judgment. *Id.* The court explained that the drops in stock price "directly followed the press releases," which meant that a reasonable factfinder could conclude that the defendant's alleged fraudulent conduct was a substantial cause of plaintiff's losses. *Id.* at 61–62.

Here, with respect to loss causation, Plaintiffs allege as follows:

Akeena's stock experienced significant increases in value following announcements made by Defendants. (AC ¶¶ 20, 61–66.) In particular, Akeena's stock price rose on December 26, 2007 from $6.84 per share to $8.10 per share after Defendants announced a credit line increase, and Akeena's stock price rose on January 2, 2008 to $11.45 per share after Defendants announced an agreement with Suntech. (*Id.* ¶¶ 61–66.) On January 7, 2008, Akeena's stock price reached a high of $16.80 per share. (*Id.* ¶ 73.) On January 16, 2008, Akeena's stock price dropped to $8.50 per share after Defendants filed an 8–K disclosing the "truth" about the credit line increase. (*Id.* ¶ 81.) On February 22, 2008, Akeena's stock price dropped to $6.20 per share after Defendants preliminarily disclosed their true sales figures for 2007. (*Id.* ¶¶ 23, 82.) Finally, on March 13, 2008, Akeena's stock price dropped to $6.15 per share after Defendants announced their final sales results for the fourth quarter of 2007 and announced the "truth" about the agreement with Suntech. (*Id.* ¶¶ 85, 86.)

Defendants contend that the testimony from Plaintiffs' own expert shows that there was no statistically significant decline in Akeena's stock price when the relevant "truths" were disclosed regarding the credit line increase and the Suntech agreement. (Opp'n at 18–26.) However, upon review it appears that Plaintiffs' expert refused to offer any opinion on the subject of loss causation. (Blasy Decl., Ex. F at 34:17–35:21, 46:20–47:7.) In particular, Plaintiffs' expert did not testify as to when the relevant truths correcting Defendants' prior misstatements were revealed to the market. (*Id.* at 126:2–134:10.) Thus, Defendants have not met their burden of eliminating the possibility that a rational jury could find that the alleged misrepresentations and omissions misled the market. *See Kaplan*, 49 F.3d at 1376–78. Based on the allegations above, the Court finds that Plaintiffs have sufficiently alleged loss causation to rely on the fraud-on-the-market theory.

Accordingly, the Court finds that Plaintiffs have met the predominance requirement of Rule 23(b)(3).

#### b. Superiority

Plaintiffs contend that a class action is superior to separate actions for each member of the putative class because the number of class members is too large, and the typical claim is too small. (Motion for Class Certification at 23.) Defendants do not contest superiority.

In determining superiority, courts must consider the four factors of Rule 23(b)(3): (1) the class members' interests in individually controlling a separate action; (2)

the extent and nature of litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the manageability of a class action. *See Zinser,* 253 F.3d at 1190; *Hunt v. Check Recovery Sys., Inc.,* 241 F.R.D. 505, 514 (N.D.Cal.2007). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser,* 253 F.3d at 1190.

In this case, the Court is not aware of any other action brought on behalf of members of the putative class, and the parties do not identify any. (*See* Motion for Class Certification at 23.) Moreover, as discussed previously, it is almost certain that there will be thousands of class members. Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum. *See Epstein v. MCA, Inc.,* 50 F.3d 644, 668 (9th Cir.1995), rev'd on other grounds, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). Finally, the Court does not see any particular management difficulties regarding this case proceeding as a class action.

Accordingly, the Court finds that Plaintiffs have met the superiority requirement of Rule 23(b)(3).

### 3. Class Period

Defendants contend that the class period should end no later than January 17, 2008, rather than March 13, 2008, the date on which Akeena announced its financial results for 2007 and Effren disclosed that Akeena's licensing agreement with Suntech would have a relatively small impact on Akeena's profitability. (Opp'n at 28; Motion for Class Certification at 6.) Defendants contend that, as a matter of law, investors could not have relied upon any allegedly misleading statements after January 17, 2008, because all the information that allegedly corrected the alleged misleading statements had been publicly disclosed by January 16, 2008 at the latest. (Opp'n at 28–29.) Plaintiffs respond that if Defendants' fraud

was revealed at all by information disclosed to the SEC on January 16, 2008, it was a partial disclosure at best, and that it would be premature at this point for the Court to decide as a matter of law that investors who purchased Akeena stock between January 16, 2008 and March 13, 2008 knew the relevant "truth." (Reply at 18–19.)

In determining the duration of a securities fraud class based on a fraud-on-the-market theory, the court must determine whether "a curative disclosure had been made so as to render it unreasonable for an investor, or the market, to continue to be mislead by the defendants' alleged misrepresentations." *In re Fed. Nat'l Mortgage Ass'n,* 247 F.R.D. at 38 (citing cases). "[A] class period should not be cut off if questions of fact remain as to whether the disclosures completely cured the market." *In re World-Com, Inc. Sec. Litig.,* 219 F.R.D. 267, 307 (S.D.N.Y.2003). "Whether a particular announcement (i.e., 'release') actually cured a prior misrepresentation is, of course, a sensitive issue to rule on at [the class certification] stage of the proceedings, because it comes so close to assessing the ultimate merits in the case." *In re Fed. Nat'l Mortg. Ass'n,* 247 F.R.D. at 39. Thus, courts have often limited their analysis to a determination of whether there is "a substantial question of fact as to whether the release cured the market or was itself misleading." *Id.*

In this case, the Court finds that Defendants' contentions do not show that no questions of fact remain as to whether the disclosures of January 16, 2008 completely cured the market. At that time, Akeena's 2007 audited financial results and fourth quarter 2007 results had not yet been released, and Effren had not yet stated that the Suntech licensing agreement was going to have a "relatively small" impact on Akeena's financial situation in 2008. (AC ¶¶ 23, 85; Charlesworth Decl. ¶ 32.) The Court finds that it was not unreasonable for an investor or the market to continue to be misled until after January 16, 2008. Accordingly, the class period will end on March 13, 2008.

#### 4. Class Modification for Purposes of Section 20A Claim

██ Defendants contend that a subclass must be created for those class members who purchased Akeena stock on the same days that Cinnamon sold stock, because only those class members have standing to assert a 20A claim against Cinnamon by virtue of having sold "contemporaneously" with him. (Opp'n at 30.)

The Ninth Circuit has not offered exact guidance as to the definition of contemporaneous trading under Section 20A.[20] As one court has explained, given the Ninth Circuit's explicit refusal to precisely define the contours of the "contemporaneous" requirement, the "better rule with respect to standing [for 20A claims] seems to be that a class action may be maintained on behalf of all persons who purchased stock on an exchange during the period that defendants were selling that stock on the basis of insider information." *Middlesex Retirement System v. Quest Software Inc.*, 527 F.Supp.2d 1164, 1196 (C.D.Cal.2007) (quoting *In re Am. Bus. Computers Corp. Sec. Litig.*, 1994 WL 848690, at *4 (S.D.N.Y. Feb. 24, 1994)). Other courts have found that purchases within five days of an insider sale are sufficient to fulfill the contemporaneity requirement of 20A. *See In re Cypress Semiconductor Sec. Litig.*, 836 F.Supp. 711, 714 (N.D.Cal.1993).

Thus, under Ninth Circuit caselaw, it is not the case that only plaintiffs who purchased stock on the same day that an alleged insider trader sold stock have standing to assert a 20A claim. Accordingly, the Court finds that the class definition does not need to be modified to create a subclass of plaintiffs who purchased Akeena stock on the same days that Cinnamon sold stock.

### V. CONCLUSION

The Court GRANTS Plaintiffs' Motion to Withdraw Sharon Hodges as a Representative Plaintiff and GRANTS Plaintiffs' Motion for Class Certification. The Court certifies Plaintiffs' class as follows:

> All persons who purchased or otherwise acquired Akeena Solar, Inc. securities between December 26, 2007 and March 13, 2008, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of Akeena, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

On or before **March 21, 2011,** the parties shall file a proposed form of class notice and a joint proposal for dissemination of notice.

---

**20.** The Ninth Circuit has declined to specify "the exact contours of 'contemporaneous trading.'" *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993). The *Neubronner* court stated that an "allegation of a three-year period of contemporaneous trading is clearly insufficiently specific to establish contemporaneity." *Id.* However, the court offered no further guidance, stating instead that the "delineation of how far apart in time trades may be without being too far apart to satisfy the contemporaneous trading requirement is best worked out in cases much closer to a probable borderline than this one." *Id.* Elsewhere, the Ninth Circuit has indicated that two months would also be outside the "contours of the period" of contemporaneous trading. *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1002 (9th Cir.2002).